RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 06a0352p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JAMES C. STEPHENS, FLOYD G. STEPHENS, RICHARD
MAHONEY, DONALD V. NIPPERT,

          *Plaintiffs-Appellants,*

    *v.*

RETIREMENT INCOME PLAN FOR PILOTS OF U.S. AIR,
INC.,

          *Defendant-Appellee.*

No. 01-3913

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 00-00144—Dan A. Polster, District Judge.

Argued: July 19, 2006

Decided and Filed: September 13, 2006

Before: MARTIN, and RYAN, Circuit Judges; MARBLEY, District Judge.[*]

---

## COUNSEL

**ARGUED:** J. Bruce Bennett, CARDWELL, HART & BENNETT, Austin, Texas, for Appellants.
Jean Marie Breen, OFFICE OF THE CHIEF COUNSEL, PENSION BENEFIT GUARANTY
CORPORATION, Washington, D.C., for Appellee. **ON BRIEF:** J. Bruce Bennett, CARDWELL,
HART & BENNETT, Austin, Texas, for Appellants. Jean Marie Breen, OFFICE OF THE CHIEF
COUNSEL, PENSION BENEFIT GUARANTY CORPORATION, Washington, D.C., Karen M.
Wahle, Tom A. Jerman, O'MELVENY & MYERS, Washington, D.C., for Appellee.

---

## OPINION

---

    BOYCE F. MARTIN, JR., Circuit Judge. Former pilots of US Airways, represented in this
class action by James Stephens and three other former pilots, brought a suit in district court against
both their former employer, US Airways, and their pension plan, the US Airways Retirement Plan
for Pilots. The pilots alleged six different causes of actions against the airline and the retirement
plan under provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"),

---

    [*]The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by
designation.

1

29 U.S.C. §§ 1001-1169. The district court dismissed all causes of action for lack of subject matter jurisdiction based on arguments stemming from the Railway Labor Act, 45 U.S.C. § 151 *et seq.* The pilots now appeal that dismissal.[1] Based on the following discussion, we affirm in part and reverse in part the district court's decision.

I.

US Airways is a large commercial airline. The pilots are all former employees of US Airways and are participants in the Retirement Plan. The Retirement Plan is part of a broader collective bargaining agreement between US Airways and the Pilots' representative labor group, the Air Line Pilots Association. Section 10.5 of the Retirement Plan entitled the Pilots to receive a lump sum distribution of their pension benefit. This lump sum was an alternative to the normal method of payment of retirement benefits, a joint and survivor annuity. The Plan states that it will pay a participant's "normal retirement amount commencing on the first day of the month coinciding with or next following his Normal Retirement Date." The Plan defines the normal form of payment as the annuity option. The Normal Retirement Date is the date on which the participant turns sixty years old.

Around 1994, US Airways and the Air Line Pilots Association orally agreed that US Airways could withhold payment of the lump sum benefit for up to forty-five days after the retiring pilot's normal benefit commencement date without paying the retiree the interest accrued during that time. US Airways claims it needs the forty-five days in order to calculate the exact amount owed to the retiree.[2]

In October 1996, Jim Stephens notified US Airways that he would turn sixty on November 25, 1996, that he wished to retire effective December 1, 1996, and that he was electing to receive his pension benefit in a lump sum amount. The amount of his benefit was $488,477.22 as of December 1, 1996. US Airways paid Jim Stephens that amount on January 14, 1997. According to Stephens, he would have accrued $14,740 in interest over the period of delay. Stephens requested payment of the amount of lost interest. That request was denied by US Airways. Stephens appealed this decision to the Retirement Board.

Pursuant to Section 184 of the Railway Labor Act, 45 U.S.C. § 184, and Section 14.3 of the Retirement Plan, US Airways and the Pilots Association created the Retirement Board. The Retirement Board has the power to "hear and determine all disputes which may properly arise out of the application and interpretation of the [Retirement Plan]." It is comprised of four members, two US Airways representatives and two Pilots Association representatives. If the four members are deadlocked on an issue, an "Impartial Referee" is brought in to break the tie.

The four member Retirement Board was deadlocked on Stephens's appeal. The Impartial Referee voted to deny Stephens's claim. The Board held that US Airways and the Pilots Association came to an oral agreement in 1994 answering the question of whether interest would be paid on the forty-five day delay of payment in the negative. The Board's opinion, written by the impartial arbitrator, relies heavily on this oral agreement along with strong historical evidence in favor of US

---

[1]The parties agreed to the dismissal of US Airways as a party while this appeal was pending.

[2]US Airways states the calculation of the lump sum amount involves the pilot's highest average earnings over a consecutive thirty-six month period during the 120 months immediately preceding the pilot's retirement date. Because the computation must wait for the pilot's last month of pay to be available (which takes place on the 18th of the month following their retirement) the forty-five day delay is allegedly necessary and unavoidable.

Airways in that around 780 lump sum payments have been made to pilots since 1989 without interest paid to the recipients.

## II.

The pilots, through Stephens and three other representatives filed this class action lawsuit on January 18, 2000. The pilots asserted six claims for relief under ERISA: (1) a claim for benefits under 29 U.S.C. § 1132(a)(1)(B); (2) a claim for equitable relief under 29 U.S.C. § 1132(a)(3)(B); (3) a claim for equitable relief for alleged violations of 29 U.S.C. §§ 1054(c)(3) and 1055; (4) a claim against US Airways for breach of fiduciary duty pursuant to 29 U.S.C. §§ 1104(a)(1)(A) and (B); (5) a claim against US Airways for breach of fiduciary duty for alleged violations of 29 U.S.C. § 1022; and (6) a claim against US Airways for breach of fiduciary duty for alleged violations of 29 U.S.C. §§ 1104(a)(1)(A) and (B). Specifically, the pilots asserted that the oral agreement in question was void under ERISA and that the Retirement Plan, as interpreted by the Retirement Board, violated ERISA. These violations led to the breach of fiduciary duty and equitable relief pled in the above claims.

The district court dismissed the suit for lack of subject matter jurisdiction. The district court held that each claim required an interpretation of the Retirement Plan, which was a matter of exclusive jurisdiction for the Retirement Board under the Railway Labor Act. The pilots now appeal that decision before this Court.

The pilots characterize their appeal as two separate issues: first, whether dismissal for lack of subject matter jurisdiction was appropriate; and second, whether the Retirement Board has exclusive jurisdiction over the claims. Because the district court held that it was because of the exclusive jurisdiction of the Retirement Board that the district court itself did not have proper subject matter jurisdiction, these arguments are part and parcel of the same broader issue: did the district court lack subject matter jurisdiction in this matter.

## III.

### A. Standard of Review

This Court reviews a district court's dismissal for lack of subject matter jurisdiction de novo. *Janis v. Ashcroft*, 348 F.3d 491, 492 (6th Cir. 2003).

### B. Railway Labor Act

Enacted in 1926, the Railway Labor Act ("RLA") was designed to "avoid any interruption to commerce or to the operation of any [railroad] engaged therein" caused by labor-management disputes. 45 U.S.C. § 151a(1); *see also* H.R.Rep. No. 328, at 1 (1926) (noting that the Act would ensure "continuity and efficiency of interstate transportation service, and [] protect the public from the injuries and losses consequent upon any impairment or interruption of interstate commerce through failures of managers and employees to settle peaceably their controversies"). In 1936, Congress extended the Act to "every common carrier by air engaged in interstate or foreign commerce." 45 U.S.C. § 181.

In an attempt to prevent labor disputes from crippling freight and passenger delivery in the railway and airline industries, the Railway Labor Act divides labor disputes into four categories: (1) representation disputes, (2) major disputes, (3) minor disputes and (4) collateral disputes governed by independent state or federal laws. *Int'l Bhd. of Teamsters, AFL-CIO v. United Parcel Serv. Co.*, 447 F.3d 491, 495 (6th Cir. 2006). The district court, in this case, characterized the disputes brought by the pilots as minor disputes.

*C.  Minor Disputes*

A minor dispute "contemplates the existence of a collective agreement . . . The dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case [from that agreement]." *Elgin, Joliet & E. Ry. Co. v. Burley*, 325 U.S. 711, 723 (1945); *see also Hawaiian Airlines v. Norris*, 512 U.S. 246, 252-54 (1994) ("[M]inor disputes[] grow out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions. Minor disputes involve controversies over the meaning of an existing collective bargaining agreement in a particular fact situation . . . [they] develop from the interpretation and/or application of the contracts between the labor unions and the carriers . . . [and] pertain[] only to disputes invoking contract-based rights.") (internal quotation marks and citations omitted); *cf. Conrail v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 302 (1989) ("This Court . . . adopted the major/minor terminology, drawn from the vocabulary of rail management and rail labor, as a shorthand method of describing two classes of controversy Congress had distinguished in the RLA: major disputes seek to create contractual rights, minor disputes to enforce them."); *id*. at 307 ("Where an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective-bargaining agreement. Where, in contrast, the employer's claims are frivolous or obviously insubstantial, the dispute is major."). Stated another way, this Court has defined a claim as "minor" if "the disputed action of one of the parties can 'arguably' be justified by the existing agreement or, in somewhat different statement, if the contention that the labor contract sanctions the disputed action is not obviously insubstantial." *Stephens v. Norfork and W. Ry.*, 792 F.2d 576, 580 (6th Cir. 1986) (internal quotation marks and citations omitted).

To address "minor disputes," Congress amended the Railway Labor Act in 1934 to give the National Railroad Adjustment Board power to settle such disputes definitively. *Burley*, 325 U.S. at 726-27. After the 1934 amendments, if either party filed a "minor" dispute with the Board, the Board had "exclusive primary jurisdiction" to issue a decision that was binding as to both parties. *Pa. R.R. Co. v. Day*, 360 U.S. 548, 550 (1959) (noting that "the National Railroad Adjustment Board ha[s] exclusive primary jurisdiction over disputes between unions and carriers based on the provisions of a collective bargaining agreement").

In this case, the question of whether the district court has subject matter jurisdiction over the counts brought by the pilots turns on whether each count constitutes a "major" or "minor" dispute. If the issue is a "minor dispute," the Retirement Board holds exclusive jurisdiction over that claim and the district court cannot have subject matter jurisdiction. If the issue is a "major dispute," the Retirement Board may not decide the issue and the district court is the appropriate court in which to raise the claim (assuming that the claims involved raise a question of federal law, which these claims do).

*D.  Application to the Airline Industry*

In 1936, Congress extended most of the obligations and rights established by the Railway Labor Act to the airline transport industry, requiring the parties to use "system, group, or regional boards of adjustment," instead of the National Railroad Adjustment Board, to resolve minor disputes. *Int'l Ass'n of Machinists v. Cent. Airlines, Inc.*, 372 U.S. 682, 686 (1963). Congress gave the system boards the same exclusive jurisdiction over "minor disputes" in the airline industry that the National Railroad Adjustment Board has over such disputes in the railroad industry. 45 U.S.C. § 184 (noting that minor disputes "shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to an appropriate adjustment board"); *see also Hawaiian Airlines*, 512 U.S. at 258. Save for relying on

system boards rather than the National Railroad Adjustment Board as the forum for minor-dispute resolution, the Act makes the resolution process and its applicability to minor disputes identical for the airline and railway industries. *Cent. Airlines*, 372 U.S. at 689 ("The statute directed that minor disputes be handled on the property in the usual manner, but failing adjustment either party could take the matter to the adjustment board, which was to hear and decide it. This provision is applicable both to rail [] and air [] carriers."). It is undisputed that the Retirement Board in this case is a valid system board.

### E. The Pilots' Arguments

The pilots argue that the issues brought in their class action suit were not "minor" as categorized by the district court, and that their suit instead raises "major" issues. "Major disputes" are "those arising out of the formation or change of collective bargaining agreements covering rates of pay, rules, or working conditions." *Atchison, Topeka & Santa Fe R.R. Co. v. Buell*, 480 U.S. 557, 562-63 (1987) (internal quotation marks and brackets omitted). Under the Railway Labor Act, no arbitral boards (such as the Retirement Board) have jurisdiction over "major disputes" and, therefore, no exclusive jurisdiction bar would prevent the district court from hearing the case. *United Transp. Union v. Cuyahoga Valley Ry. Co.*, 979 F.2d 431, 435 (6th Cir. 1992). The pilots argue that their ERISA claims involve the application of an oral agreement between US Airways and the Air Line Pilots Association to the Retirement Plan and this oral agreement was a change to the collectively bargained for Retirement Plan. It appears to be undisputed by the parties and clear from the plain language of the Retirement Board's opinion that it relied heavily on the oral agreement in coming to its final decision on Stephens's claim. Jurisdiction in this case turns on how this Court chooses to characterize the oral agreement in light of the Retirement Board's decision.

The pilots argue that the mere inclusion of the oral agreement as binding on the application of the Retirement Plan, no matter what interpretation is given to the agreement or the Plan, is a violation of ERISA. Because the Retirement Board treated the oral agreement as a binding alteration, they claim that this dispute qualifies as a "major dispute." US Airways counters that argument by stating that the Retirement Board merely used the oral agreement as further evidence on how to interpret the language already within the Retirement Plan. The Plan is silent as to how to determine when a lump sum payment must be paid and whether interest must be paid on that amount based on any delay by US Airways. Therefore, according to US Airways, the Retirement Board had to take any evidence it could find, including the oral agreement and historical evidence (about 780 lump sum payments had been made in a delayed manner without interest between 1989 and 1999) in order to properly interpret the existing Retirement Plan.

### F. Retirement Board's Opinion

There is a close question of how to characterize the oral agreement. Below are the relevant portions of the Retirement Board's opinion:

> [T]his decision is based on my construction of the applicable provisions of the Pilot Retirement Income Plan (hereinafter the Plan) and the parties' collective bargaining agreement.
> . . .
> I point out that the Company and [the Pilots Association] have bargained to agreement over various provisions incorporated into the Plan, and, clearly, they have the authority to reach an understanding on whether or not interest should be paid on lump sum distributions.
> 
> > The Company contends that it and [the Pilots Association] reached an agreement in early 1994 on this issue and resolve that interest would not be paid on

lump sum distributions made within 45 days following a pilot's retirement and that interest on such distributions would be paid at the current interest rate commencing with the 46th day until such time as payment was received. The evidence introduced at the arbitration hearing supported this contention. Steve Weidenmuller, Pension Director, testified that in early 1994 [US Airways] and [the Pilots Association] reached an oral understanding described above. . . . Additionally, the parties renegotiated their collective bargaining agreement in 1997, and there was no evidence of any change in the parties' joint understanding concerning interest on lump sum distributions.
. . .
       In view of the parties' understanding that interest will not be paid on lump sum distributions paid within 45 days following the commencement date of a pilot's retirement and in view of the fact that the lump sum payment was made to the claimant here within 45 days of the effective date of the claimant's retirement, the claim for interest must be denied.

From this discussion, it is this Court's understanding that the Retirement Board took the oral agreement as part and parcel of the collective bargaining agreement. There is no attempt to interpret the language of the Retirement Plan and how the oral agreement fits into that language, as is argued by US Airways. Instead, the Retirement Board simply took that agreement as another section of the collectively bargained for Retirement Plan as they held that US Airways and the Pilots Association "have the authority to reach an understanding on whether or not interest should be paid on lump sum distributions" and used that authority in coming to the oral agreement. It is the existence of the agreement which the pilots are arguing about, not any interpretation of the collective bargaining agreement. While the Retirement Board does limit its decision to its "construction of the applicable provisions of the Pilot Retirement Income Plan . . . and the parties' collective bargaining agreement," we believe it went beyond those borders in regarding the oral agreement as part of those documents. While the employer bears a "relatively light burden" in establishing that a disputed action is "arguably justified" and subject to exclusive arbitral jurisdiction under the Railway Labor Act, *Conrail*, 491 U.S. at 306-07, we agree with the pilots' characterization of the oral agreement.

## G.  US Airways's Arguments

US Airways argues that any attempt to characterize the oral agreement as illegal under federal law requires an interpretation of the Retirement Plan in order to determine if the oral agreement is contradictory to that language. That is incorrect. The oral agreement may be assumed to fully comply with the Retirement Plan and still be potentially illegal based on federal law. In this case, the pilots contend that the Retirement Plan violates ERISA due to its delay in payment of the lump sum and failure to pay interest on the amount once payment is tendered and they, facially, appear to have reasonable claims.[3]

Additionally, we fear that ruling for US Airways in this case could lead to troubling results in future cases. If the pilots cannot bring their claims to the district court based on subject matter jurisdiction then it creates a potentially dangerous end-around ERISA's limitations on collectively-bargained-for provisions. A company and labor association could be silent as to an issue in their written agreement, then make an oral agreement as to the outcome of the issue which potentially violates federal law. Then, the arbitral board decides the oral agreement is proof as to how the

---

[3]Because this case is brought to this Court having been dismissed based on subject matter jurisdiction, we need not and cannot decide the merits of the pilots' claims.

silence should be interpreted, insulating the decision as a "minor dispute" and keeping it away from federal courts.

In this case, US Airways embraces this potential reality by arguing that the Retirement Plan includes a provision that if the plan is silent or ambiguous on an issue, then US Airways has "the sole right to interpret and construe the Plan" and its decision may only be reviewed by the Retirement Board. This provision may have not been intended to do so, but it has the potential result of providing US Airways with the means of allowing all questions, including those implicating federal law, to be under the exclusive jurisdiction of the Retirement Board.

*H. Counts I, II, and V*

The above discussion addresses the subject matter jurisdiction concerns for Counts I and II (alleging violations of 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3)(B) in adopting the oral agreement rather than the terms of the written Retirement Plan), and Count V (alleging that the result of the Retirement Board's decision – the withholding of the lump sum payment and retaining the interest – violates US Airways's fiduciary duty to the pilots under 29 U.S.C. §§ 1104(a)(1)(A) and (B)). Based on the above discussion, we reverse the district court's dismissal based on lack of subject matter jurisdiction as to these three counts.

*I. Counts IV and VI*

Counts IV and VI allege violations of 29 U.S.C. § 1132(a)(3) stemming from US Airways not distributing the lump sum payments as promised in either the Retirement Plan or the Summary Plan Description. Both of these claims appear to argue that the Retirement Board's final result was inconsistent with the documents it was charged to interpret. These claims are separate and independent, despite the pilots' arguments to the contrary, from whether the oral agreement was illegal, and specifically ask the district court to interpret the Retirement Plan and the Summary Plan Description in order to determine if there actually is a conflict between those documents and the Retirement Board's final result. Therefore, we hold that these two claims are "minor disputes" and subject to the exclusive jurisdiction of the Retirement Board. *See Hawaiian Airlines*, 512 U.S. at 258.

*J. Count III*

Finally, Count III alleges that US Airways breached its duty under 29 U.S.C. § 1054(c)(3) to ensure that the retired pilots' lump sum benefits were the actuarial equivalent of the normal annual benefits under the Plan. The district court dismissed this cause of action because there was no clear federal statutory directive for such a claim and the claim is "inextricably intertwined" with the collective bargaining agreement and the Retirement Plan. Section 1054(c)(3) states

> For purposes of this section, in the case of any defined benefit plan, if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age, or if the accrued benefit derived from contributions made by an employee is to be determined with respect to a benefit other than an annual benefit in the form of a single life annuity (without ancillary benefits) commencing at normal retirement age, the employee's accrued benefit, or the accrued benefits derived from contributions made by an employee, as the case may be, shall be the actuarial equivalent of such benefit or amount determined under paragraph (1) or (2).

The district court, in its discussion of Count III, then argued the merits of this claim discussing if Treasury Regulations applied to the claim, "whether case law offers support for Plaintiffs' position

that a 45-day delay in payment is unreasonable," and whether case law provides the employer the discretion to determine what is "the actuarial equivalent." Upon finding these all went against the pilots, the district court dismissed the claim based on subject matter jurisdiction.

The district court's discussion appears to be a review of the merits of the pilots' claim rather than an evaluation as to whether the district court had subject matter jurisdiction. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998) (holding that federal courts must assure themselves that they have subject matter jurisdiction before addressing the merits of a suit). The question of subject matter jurisdiction appears to begin and end with the language of the statute: an alternate form of benefit payment "*shall* be the actuarial equivalent" of the normal benefit amount. 29 U.S.C. § 1054(c)(3). Assuming the interpretation of the Retirement Plan by the Retirement Board is correct, there is still a question of whether the amount is appropriate as required by federal statute. This claim does not involve the interpretation of the collective bargaining agreement by the Board but its ultimate result. Stephens (and those similarly situated) have been given their lump sum amount and it is within the federal subject matter jurisdiction to hear a claim questioning whether that final amount is permissible under Section 1054(c)(3). Therefore, we find that subject matter jurisdiction is appropriate for this claim and reverse the district court.

IV.

Based on the above discussion, we reverse the district court and hold that there is appropriate subject matter jurisdiction for Counts I, II, III, and V. For Counts IV and VI, we affirm the district court's dismissal based on a lack of subject matter jurisdiction.