RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0223p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

MICHAEL R. EMSWILER,

*Plaintiff-Appellant,*

v.

No. 11-3517

CSX TRANSPORTATION, INC., BROTHERHOOD
OF LOCOMOTIVE ENGINEERS AND TRAINMEN,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:09-cv-1004;
Edmund A. Sargus, Jr., District Judge; Mark R. Abel, Magistrate Judge.

Argued: June 7, 2012

Decided and Filed: July 20, 2012

Before: SUTTON, McKEAGUE, and RIPPLE[*], Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Gary A. Reeve, LAW OFFICES OF GARY A. REEVE, LLC, Columbus, Ohio, for Appellant. Kristin Seifert Watson, CLOPPERT, LATANICK, SAUTER & WASHBURN, Columbus, Ohio, John B. Lewis, BAKER & HOSTETLER LLP, Cleveland, Ohio, for Appellees. **ON BRIEF:** Gary A. Reeve, LAW OFFICES OF GARY A. REEVE, LLC, Columbus, Ohio, for Appellant. Kristin Seifert Watson, Frederick G. Cloppert, CLOPPERT, LATANICK, SAUTER & WASHBURN, Columbus, Ohio, Michael S. Wolly, ZWERDLING, PAUL, KAHN & WOLLY, P.C., Washington, D.C., John B. Lewis, BAKER & HOSTETLER LLP, Cleveland, Ohio, for Appellees.

_____

[*] The Honorable Kenneth F. Ripple, United States Circuit Judge for the United States Court of Appeals for the Seventh Circuit, sitting by designation.

——————————

## OPINION

——————————

McKEAGUE, Circuit Judge.   Plaintiff Michael Emswiler sued his employer, CSX Transportation, Inc. ("CSX"), a railroad, and the Brotherhood of Locomotive Engineers and Trainmen ("BLET") after his seniority on the roster of train engineers was adjusted in May 2009.   Emswiler alleged breach of collective bargaining agreement ("CBA"), breach of duty of fair representation, and disability discrimination under Ohio law.   The parties brought motions for summary judgment, and the district court granted Defendants' motions.   Emswiler appeals.   The district court correctly determined it could not reach the merits of Emswiler's claims for breach of CBA and disability discrimination due to his failure to pursue arbitral mechanisms mandated by the Railway Labor Act.   Accordingly, we affirm the grant of summary judgment on those claims.   As for Emswiler's claim for breach of duty of fair representation, we also affirm.

The Railway Labor Act ("RLA") governs disputes between management and labor in the railroad industry.   45 U.S.C. §§ 151, 153.   The RLA promotes stability in labor-management relations by providing effective and efficient remedies for labor disputes, thereby preventing interruptions in rail service.   *Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 94 (1978).   The RLA divides such disputes into two categories: major and minor.   Major disputes concern the formation of collective bargaining agreements, whereas minor disputes deal with the interpretation of existing CBAs.   *See Consol. Rail Corp. v. Ry. Labor Execs. Ass'n.*, 491 U.S. 299, 302–303 (1989).   This is a minor dispute.

The RLA "establishes a mandatory arbitral mechanism for 'the prompt and orderly settlement' . . . of disputes."   *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994) (quoting 45 U.S.C. § 151a).   With regard to minor disputes, the RLA provides initially for settlement through contractually agreed-upon grievance procedures; these are sometimes referred to as "on the property" remedies.   *See* 45 U.S.C. § 152 First, Second.   Failure to resolve minor disputes "on the property" gives rise to

compulsory and binding arbitration by one of the divisions of the National Railroad Adjustment Board ("NRAB" or "the Board") or a privately established arbitration panel. 45 U.S.C. § 153 First (i). After taking his or her dispute through these mechanisms, an employee aggrieved by an NRAB decision may file his or her claim in the appropriate district court. 45 U.S.C. § 153 First (q). "Judicial review of Adjustment Board orders is limited to three specific grounds: (1) failure of the Adjustment Board to comply with the requirements of the Railway Labor Act; (2) failure of the Adjustment Board to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption [by a member of the division making the order]." *Sheehan*, 439 U.S. at 93 (citing 45 U.S.C. § 153(q)). Our discussion of Emswiler's claims for breach of CBA and disability discrimination focuses on his failure to bring his claim to the NRAB before coming to court.

## I. FACTUAL BACKGROUND

CSX operates a 23,000 mile railroad system in twenty-three states and two Canadian provinces. CSX has both train-service workers and engine-service workers. Locomotive engineers are engine-service workers, whereas conductors and brakemen are train-service workers, also referred to as trainmen. BLET is the bargaining representative for engine-service workers, and the United Transportation Union ("UTU") is the bargaining representative for train-service workers. As their job titles suggest, the engineer controls the engine and operates the controls that move the train, whereas the conductor is responsible for the crew in control of the body of the train. Where all other factors are equal, engine-service workers earn more per day than train-service workers. Shifts are assigned to all employees based on their seniority within the particular category of service, such that an engineer with twenty years of engine-service seniority will have priority for being assigned a shift over an engineer with only five years of engine-service seniority.

The terms of CSX engineers' employment are governed by a collective bargaining agreement ("CBA") between BLET and CSX. At the time Emswiler began

his engineer training, the applicable CBA from 1955 contained the following provisions regarding how to establish and contest seniority:

> **Seniority Date**
>
> **(a)** The date of a promoted or hired engineer shall be the date of his first service as an engineer when there are no demoted or furloughed engineers, or when senior qualified man to be promoted is not available the man used as engineer will establish date for the senior man. When the date of a promoted or hired engineer has been established as specified herein, such date shall be posted and if not challenged in writing within sixty (60) days after such posting no protest against such date shall afterward be heard.
>
> . . .
> **Seniority Roster**
> **(d)** A seniority roster of engineers will be compiled in order of their seniority. Rosters will be revised and posted under glass (showing actual date of posting) and in a conspicuous place at all engine terminals and when necessary, at other points agreed upon, in January and July of each year and two (2) copies furnished to each Local Chairman of the seniority district affected.
>
> Seniority rosters will be subject to correction on proof of error or omission if written protest was made within sixty (60) days from date of posting . . . .

(1955 CBA, Page ID # 1476–77.)

It had been longstanding company practice to allow engineer trainees who had been removed from training for medical reasons to retain their seniority dates, provided they completed training at their earliest opportunity upon removal of the medical restriction. That practice was memorialized in the 2007 CBA, which states:

> F.        It is also understood that employees who are unable to complete their scheduled engineer training class due to sickness, FMLA, military service or other reasonable circumstances, as determined by the BLET General Chairman of jurisdiction and CSXT's Highest Designated Officer, will retain their proper position for promotion, if they return to service at their earliest opportunity.

(2007 CBA, Page ID # 1510.) The 2007 CBA provides for appeals to the seniority roster within two years of posting.

Emswiler was employed as a train-service worker by Chessie Systems, which was subsequently purchased by CSX, from 1978–81. Emswiler began locomotive engineer training in September 1980. He completed the in-class portion of the training, but before he made his "qualifying ride" to complete training and become an engineer, Emswiler was medically disqualified from train service altogether because he was diagnosed with Type I diabetes. Emswiler left Chessie in February 1981. Despite the fact that he did not complete engineer training prior to his medical removal, Emswiler's name was placed on the engineer seniority roster with a seniority date of May 27, 1980 ("the 1980 seniority date") and remained there.

In 1993, Emswiler returned to CSX after more than a decade of working other jobs, including work with another railroad. Upon returning, Emswiler worked as a train-service worker. Emswiler states he did not seek work as an engine-service worker at that time because he was concerned that his diabetes would cause him to lose consciousness or not be alert enough to perform well. In fact, Emswiler did lose consciousness while working as a brakeman, and an accident resulted. In 1997, Emswiler began using an insulin pump, which he describes as "crude and difficult to use." (Emswiler Aff., Page ID # 1055.) On March 10, 1997, CSX's Chief Medical Officer deemed Emswiler "qualified to perform railway service without restrictions . . . ." (Medical Letter, Page ID # 1996.) But Emswiler still felt the insulin pump did not work well enough to allow him to perform engine-service duties safely. So Emswiler did not begin inquiring about completing his engineer service training to become an engine-service worker until mid-2007, when he was told there would be a new insulin pump available to him that would allow him to deliver insulin immediately when needed. Emswiler now uses the improved pump, and feels that it allows him to control his insulin levels and more effectively work as an engineer.

Emswiler entered the engineer training class of April 2008 and completed training in October 2008. Before he began training, he was advised by a CSX employee that he would retain his existing seniority date upon becoming an engineer. Because shifts are meted out based upon seniority, and the 1980 seniority date gave Emswiler

high seniority status, he was able to work as an engineer full time from October 30, 2008 through May 26, 2009.

On February 6, 2009, BLET Regional Vice-General Chairman William Lyons wrote to BLET General Chairman Rick Finamore stating that Lyons had received a protest against Emswiler's seniority from a local BLET Chairman named Bob Gibson. Finamore consulted with CSX Director of Labor Relations Rick Heil concerning Emswiler's seniority. Based on the collective bargaining agreement, Finamore was empowered to request seniority changes and Heil was empowered to make such changes on behalf of CSX.

On May 26, 2009, Heil responded by letter offering a settlement to Finamore that would adjust Emswiler's seniority date to April 7, 2008. Finamore signed that he agreed to the settlement on the same day. The settlement letter reasoned:

> There is no evidence that Mr. Emswiler was medically restricted from returning to Engine service in 1993. He voluntarily chose to return to the trainman's ranks where he remained for almost 15 years before he contacted anyone about returning to complete Engineer Training. Therefore, he should have been given a new seniority date consistent with the date he began Engineer training on April 7, 2008.

(Settlement Letter, Page ID # 1775.)

On July 1, 2009, Emswiler wrote to Heil requesting that his seniority be restored to the 1980 date. On August 10, 2009, Heil denied the request, noting that procedurally, Emswiler's appeal should have been handled by the BLET and Finamore. However, Heil wrote that even if it was procedurally appropriate for the company to review the adjustment, the adjustment was proper based on the same reasons Heil had set forth in the original letter. Emswiler also filed numerous claims about the adjustment on the CSX electronic system. UTU Chairman Lesniewski wrote a letter to Heil, dated September 23, 2009, in which he requested that a claim be conferenced, i.e. that "on the property" proceedings be initiated, regarding the adjustment in Emswiler's seniority. (Leniewski Email, Page ID # 1545.) Neither the UTU nor Emswiler processed his claim before the NRAB.

Instead, on November 6, 2009, Emswiler filed this lawsuit in the district court. Emswiler alleged breach of the applicable CBAs, breach of the BLET's duty of fair representation, and disability discrimination under Ohio law. The parties each filed motions for summary judgment, which the district court granted to Defendants. This appeal followed.

## II. ANALYSIS

The district court granted summary judgment to Defendants on all of Emswiler's claims. Because the RLA mandates an exclusive avenue to the federal courts for Emswiler's breach of CBA and discrimination claims, an avenue Emswiler neither pursued nor is excused from pursuing, the district court correctly recognized that relief was unavailable on these claims. Further, because the record does not substantiate Emswiler's claim for breach of duty of fair representation, the district court's grant of summary judgment on that claim was also proper.

This Court reviews the district court's grant of summary judgment de novo. *CSX Transp. Inc. v. United Transp. Union*, 395 F.3d 365, 368 (6th Cir. 2005). Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Defendants bear the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of Emswiler's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Emswiler must then present sufficient evidence from which a jury could reasonably find in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). This Court then considers whether, drawing all reasonable inferences in favor of Emswiler, Defendants must prevail as a matter of law. *CSX Transp. Inc.*, 395 F.3d at 368.

## A. The RLA Scheme for Resolving Minor Disputes

Emswiler invoked the district court's jurisdiction pursuant to 28 U.S.C. § 1331 because his claims "arise under" the RLA. Where, as here, an employee failed to utilize the RLA-mandated arbitral process before bringing a minor dispute to court, the Sixth

Circuit has previously held that the district court lacked jurisdiction over the claim and it had to be dismissed. *See, e.g.*, *Kaschak v. Consol. Rail Corp.*, 707 F.2d 902, 905 (6th Cir. 1983) (citing *Andrews v. Louisville & Nashville R.R.*, 406 U.S. 320 (1972)). The admonition against exercising jurisdiction in such cases was unequivocal: "an employee may not forego resort to the Board and opt to have a dispute with a carrier considered, in the first instance, by a federal court. Where such a choice is made, a motion to dismiss pursuant to 12(b)(1) must be sustained." *Id.* (citing *McKinney v. Int'l Assoc. of Machinists & Aerospace Workers, Dist. Lodge No. 1450, I.A.M.*, 624 F.2d 745 (6th Cir. 1980)). More recently, this Circuit has reiterated that "the district court cannot have subject matter jurisdiction" over a minor dispute under the RLA. *Stephens v. Ret. Income Plan for Pilots of U.S. Air, Inc.*, 464 F.3d 606, 610 (6th Cir. 2006) (affirming dismissal for lack of jurisdiction over a minor dispute that was subject to binding arbitration by an established Retirement Board). If Emswiler's failure to exhaust RLA remedies deprived the district court of subject matter jurisdiction, then technically, its grant of summary judgment in favor of the defendants would have been improper and dismissal for lack of jurisdiction would have been the only appropriate ruling.

However, in *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 503 (2006), the Supreme Court endeavored to clarify the distinction between two frequently conflated concepts: "federal-court 'subject-matter' jurisdiction over a controversy; and the essential ingredients of a federal claim for relief." The Court expressed concern about what it called "drive-by jurisdictional rulings" and observed that such "less than meticulous" rulings should not be accorded precedential effect. *Id.* at 511. The Court set forth a "readily administrable bright line" test:

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. . . . But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

*Id.* at 515–16 (footnote, citation omitted). Specifically, *Arbaugh* held that the Title VII threshold requirement that an employer have "fifteen or more employees," 42 U.S.C.

§ 2000e-2(a)(1), is an essential element of a plaintiff's claim, but is a nonjurisdictional restriction. Yet, the decision has broader implications. Justice Ginsburg, who authored *Arbaugh*, later indicated that "the unanimous *Arbaugh* Court anticipated that all federal courts would thereafter adhere to the 'bright line' held dispositive that day." *Reed Elsevier, Inc. v. Muchnick*, ___ U.S. ___, 130 S.Ct. 1237, 1250 (2010) (Ginsburg, J., concurring).

Since *Arbaugh* was decided, several statutory requirements that were previously considered jurisdictional have been reconsidered. For example, the requirement to register a copyright before suing for infringement, which was previously considered to be jurisdictional, has, in the wake of *Arbaugh*, been held nonjurisdictional. *Muchnick*, 130 S.Ct. at 1248. Similarly, the Age Discrimination in Employment Act's requirement that a plaintiff file a charge with the Equal Employment Opportunity Commission prior to bringing suit, previously considered a jurisdictional restriction, is now considered mandatory but nonjurisdictional. *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 401–402 (6th Cir. 2008) (overruling prior precedent in light of *Arbaugh*). Further, a taxpayer's failure to exhaust IRS administrative remedies has been held not to deprive the district court of subject matter jurisdiction over his claim for damages related to the sale of his property, although the failure to exhaust still led to dismissal. *Hoogerheide v. I.R.S.*, 637 F.3d 634, 638 (6th Cir. 2011) (collecting and analyzing cases impacted by *Arbaugh*). The Supreme Court has also applied the *Arbaugh* clear-statement test in the context of the RLA. *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Com. of Adjustment, Cen. Reg.*, ___ U.S. ___, 130 S.Ct. 584, 597 (2009). In *Union Pacific*, the Court decided that noncompliance with the RLA requirement that parties to a minor dispute take part in a pre-arbitration settlement conference prior to bringing their claim to the Adjustment Board was not jurisdictional. *Id.*

While the RLA clearly precludes the federal courts from granting relief on minor disputes that have not first been brought through the RLA arbitral process, such disputes still raise a question "arising under" federal law, i.e. the RLA. *See* 45 U.S.C. § 153 First (i), (p), (q); 28 U.S.C. § 1331. So, it is "less than meticulous" to say that failure to

arbitrate under the RLA deprives the courts of subject matter jurisdiction. *See Arbaugh*, 546 U.S. at 511. Rather, the failure to arbitrate impacts the plaintiff's "'ability to prove the defendant bound by the federal law asserted as the predicate for relief—a merits-related determination.'" *Arbaugh*, 546 U.S. at 511 (quoting 2 J. Moore et al., Moore's Federal Practice § 12.30[1], p. 12-36.1 (3d ed. 2005)). Thus, we find that this Circuit's cases stating that a failure to exhaust RLA remedies in a minor dispute deprives the courts of subject matter jurisdiction "should be accorded no precedential effect." *Arbaugh*, 546 U.S. at 511.[1]

The fact that courts have recognized exceptions to the RLA arbitral requirement supports the conclusion that the requirement is a nonjurisdictional restriction. "'[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" *Arbaugh*, 546 U.S. at 514 (quoting *United States v. Cotton*, 535 U.S. 625, 630 (2002)). As described below, there are several recognized exceptions to the RLA's exhaustion requirement. One exception, which is relevant to this case, exists when pursuing arbitral mechanisms would be futile due to collusion between the union and employer. *Glover v. St. Louis-S.F. Ry. Co.*, 393 U.S. 324, 331 (1969). If the failure to arbitrate were jurisdictional, then recognition of this futility exception to create jurisdiction where it otherwise did not exist would make subject matter jurisdiction hinge on the behavior of the parties—an impermissible result. *See, e.g.*, *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004) (reasoning that "[c]haracteristically, a court's subject-matter jurisdiction cannot be expanded to account for the parties' litigation conduct").

Accordingly, we hold that, in the "aftermath of *Arbaugh*," completion of the RLA-mandated arbitral process does not affect a district court's subject matter

---

[1]We note that although the Sixth Circuit's decision in *Stephens*, 464 F3d at 610, was argued and decided several months after *Arbaugh*'s clarification issued, *Arbaugh* is not cited in *Stephens*. While we do not depart lightly from such prior controlling authority in the Circuit, we believe this result is dictated by *Arbaugh*. *See United States v. Lucido*, 612 F.3d 871, 876 (6th Cir. 2010) (recognizing that "[a]lthough a prior decision by a panel of this Court is controlling authority in subsequent cases, an inconsistent decision of the United States Supreme Court requires modification of the earlier panel decision." (internal quotation marks omitted)); *Rinard v. Luoma*, 440 F.3d 361, 363 (6th Cir. 2006) (questions that lurk in the record are not decided and do not form binding precedent).

jurisdiction over a claim but instead goes to the court's ability to reach the merits of a dispute and grant relief—"mandatory though the exhaustion requirement . . . may be, it is not jurisdictional." *Hoogerhide*, 637 F.3d at 636. It follows that if Emswiler's failure to pursue RLA arbitration cannot be excused, the district court properly granted summary judgment to Defendants.

## B.  Emswiler's Claim for Breach of CBA

There are several exceptions to the RLA exhaustion requirement that would allow the courts to grant relief in spite of a failure to arbitrate. These exceptions include: (1) where the union "has the 'sole power' under the contract to invoke the upper level grievance procedures and yet prevents an employee from exhausting contractual remedies by wrongfully refusing to process the employee's grievance in violation of its duty of fair representation;" (2) "when the employer's conduct amounts to a repudiation of the remedial procedures specified in the contract;" and (3) when resort to the administrative procedures would be wholly futile. *Atkins v. Louisville & Nashville R.R. Co.*, 819 F.2d 644, 649–50 (6th Cir. 1987) (citing *Glover*, 393 U.S. at 324; *Vaca v. Sipes*, 386 U.S. 171, 185–86 (1967)).

Emswiler contends that pursuit of RLA-mandated arbitral processes would have been futile, invoking the exception set forth by the Supreme Court in *Glover*, 393 U.S. at 324. In *Glover*, the Supreme Court held that, where black railroad employees claimed that racial discrimination practiced by the railroad in concert with union officials was preventing the plaintiffs from acquiring higher paying jobs, the plaintiffs did not need to pursue RLA-mandated remedies before bringing suit. The Court said:

> Here the complaint alleges in the clearest possible terms that a formal effort to pursue contractual or administrative remedies would be absolutely futile. Under these circumstances, the attempt to exhaust contractual remedies . . . is easily satisfied by petitioners' repeated complaints to company and union officials, and no time-consuming formalities should be demanded of them. The allegations are that the bargaining representatives of the car employees have been acting in concert with the railroad employer to set up schemes and contrivances to bar Negroes from promotion wholly because of race. If that is true,

> insistence that petitioners exhaust the remedies administered by the union and the railroad would only serve to prolong the deprivation of rights to which these petitioners according to their allegations are justly and legally entitled.

*Id.* at 331.

Under *Glover*, alleged collusion between the carrier and union would make pursuing RLA arbitration futile. *Id.*; *see also Richins v. S. Pac. Co.*, 620 F.2d 761, 762 (10th Cir. 1980) (finding well-pled allegations of collusion where two companies merged and one of the unions was allegedly aligned with the carrier against merged company employees); *Raus v. Bhd. Ry. Carmen of U.S. & Canada*, 663 F.2d 791, 798 (8th Cir. 1981) (finding the critical question to be whether there was collusion, and holding that collusion was not alleged).

Emswiler claims that BLET and CSX were aligned against him and the NRAB arbitration procedure would have been "perfunctory, at best." (Appellant Br. at 22.) But this allegation does not carry his burden to show futility. The Sixth Circuit requires "a clear and positive showing of futility before excusing a failure to exhaust . . . ." *Miller v. Chrysler Corp.*, 748 F.2d 323, 326 (6th Cir. 1984) (internal quotation marks omitted). It is insufficient to show that a party subjectively thought procedures would be futile. *Terwilliger v. Greyhound Lines, Inc.*, 882 F.2d 1033, 1039 (6th Cir. 1989). Even if Emswiler had little chance of prevailing before the NRAB, that would not be sufficient to show futility. *Cf. Miller*, 748 F.2d at 325–26 (finding a claim did not meet the futility exception where the union and company agreed on the interpretation of the CBA so the plaintiff was unlikely to prevail on a grievance decided by the union).

Further, the cooperation between CSX and BLET alleged by Emswiler is not comparable to the collusion between the union and company in *Glover*, 393 U.S. at 331. There, the plaintiffs alleged "that the bargaining representatives of the car employees have been acting in concert with the railroad employer to set up schemes and contrivances to bar Negroes from promotion wholly because of race." *Id.* By contrast, Emswiler only points out that BLET and CSX agree about how the CBA should be interpreted with regard to his seniority date. In an attempt to demonstrate collusion,

Emswiler has submitted a chain of emails between himself and some members of the BLET. But the emails were not authored by the major decisionmakers in Emswiler's adjustment and do not evidence collusion.

Emswiler's claim of futility also lacks support under our case law discussing this exception. In *Kaschak*, 707 F.2d at 902, this Court found futility where a plaintiff relied on his union to file a grievance, the union had failed to do so, and the claim would have been time barred by the time the plaintiff became aware of the union's neglect. There was no such reliance here. Moreover, the *Kaschak* panel took pains to "emphasize the narrow scope" of its decision, noting that the "burden on the plaintiff remains extreme." *Id.* at 913. "He essentially must show that the Union breached its duty of fair representation by not processing his grievance and that it was reasonable for him to rely on the fact that they would not breach that duty." *Id.* Similarly, in *Nemitz v. Norfolk & W. R.R. Co.*, 436 F.2d 841, 850 (6th Cir. 1971), this Court excused a failure to arbitrate where the plaintiffs sought arbitration and were refused that remedy by their union. But Emswiler did not attempt to arbitrate, so *Nemitz* is inapposite. Finally, in *Atkins v. Louisville & Nashville R.R. Co.*, 819 F.2d 644, 650 (6th Cir. 1987), this Court found that a claim did not meet the futility exception where plaintiffs could have pursued a grievance procedure on their own and were not limited in their ability to do so by any action on the part of the union. *Atkins* is the most comparable futility case from this Circuit to Emswiler's situation, and there this Court did not find futility.

Because Emswiler did not present facts satisfying the futility exception, his failure to take his claim through the arbitral process mandated by the RLA before coming to court means that he has failed to meet a predicate for relief under the RLA. Thus, we affirm the district court's decision to grant summary judgment in favor of Defendants.

## C.  Emswiler's Discrimination Claim

Emswiler also claims that the decision to adjust his 1980 seniority date was made because of his diabetes in violation of Ohio employment discrimination law. Emswiler claims that, because the 2007 CBA allowed ill engine-service trainees to maintain

seniority status if they returned at their earliest opportunity, Defendants acted in a discriminatory manner by adjusting his seniority without inquiring whether, given his condition, he had returned to engine-service training at his earliest opportunity.

If Emswiler's disability discrimination claim is preempted by the RLA, then he is required to pursue the RLA-mandated arbitral process before bringing his claim to court, and his failure to do so precludes consideration of the merits. The district court correctly determined that, because Emswiler was asking the court to construe the CBA in order to decide his discrimination claim, this claim was preempted by the RLA. This Circuit's two-step test for preemption requires a determination as to: (1) whether proof of the state law claim would require interpretation of the CBA; and (2) whether the right claimed by plaintiff is created by the collective bargaining agreement or by state law. *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994). Likewise, in *Norris*, 512 U.S. at 261, the Supreme Court held that the RLA preempts state-law claims when "the resolution of a state-law claim depends on an interpretation of the CBA."

To establish a prima facie case of disability discrimination under Ohio law, a plaintiff must show that "(1) the [plaintiff] had a disability; (2) the defendant took an adverse employment action, at least in part, because the plaintiff had the disability; and (3) the [plaintiff], while having a disability, could safely and substantially perform the essential functions of the job in question." *Wallace v. Mantych Metalworking*, 937 N.E.2d 177, 183 (Ohio Ct. App. 2010). The first and third elements are not at issue, so Emswiler's disability claim would turn on the second element, i.e., whether an adverse employment action was taken because of Emswiler's disability.

The manner in which Emswiler styles his claim plays directly into the preemption test. Emswiler claims that Finamore and Heil incorrectly interpreted the requirement that an ill engine-service trainee return to training at his earliest opportunity in order to maintain seniority. If the phrase "at [his] earliest opportunity" means when he is deemed medically fit by a physician, then Defendant's interpretation prevails, and the decision was not based on Emswiler's disability. But if "at [his] earliest opportunity" means whenever he feels physically able, then Emswiler's view could

arguably prevail and the decision could have been at least partially based on his disability. Because resolving those competing positions requires interpretation of the collective bargaining agreement, the district court correctly found that the first part of the preemption analysis applied here. *See DeCoe*, 32 F.3d at 216. This claim is not a "purely factual question about . . . an employer's conduct and motives" and cannot be decided without interpretation of the CBA. *Norris*, 512 U.S. 246 (internal quotation marks omitted).

Because the RLA preempts Emswiler's employment discrimination claim, he was required to exhaust the RLA-mandated arbitral processes before coming to court. Thus, we affirm the district court's grant of summary judgment to Defendants as to this claim.

**D. Emswiler's Claim for Breach of Duty of Fair Representation**

Under the doctrine of fair representation, the union, as an exclusive agent of the employees, is obliged to "serve the interests of all its members without hostility or discrimination toward any, to exercise discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca*, 386 U.S. at 177. Emswiler claims that the BLET breached this duty by initiating and allowing his change in seniority status.

To prevail on a claim for breach of duty of fair representation, Emswiler must show that (1) the action taken by the BLET was contrary to the CBA; and (2) that the action was dishonest, in bad faith, or discriminatory. *See Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570–71 (1976). Emswiler has not demonstrated that the BLET's decision to adjust his seniority was contrary to the CBA. In fact, the decision was likely in the best interests of the majority of its members, who could have been missing out on shifts due to Emswiler's incorrect seniority status. Nor has Emswiler created a factual dispute indicating that the BLET acted in bad faith. Again, Emswiler points to a chain of emails between he and some members of the BLET to suggest bad faith, but this communication did not involve the major decisionmakers in his adjustment and does not evidence bad faith on their part.

In sum, Emswiler's claim for breach of duty of fair representation lacks merit. Thus, we affirm the decision of the district court granting summary judgment to Defendants in this regard.

### III.  CONCLUSION

Accordingly, we **AFFIRM** the district court's grant of summary judgment in Defendants' favor.