RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0233p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

---

FLIGHT OPTIONS, LLC; FLEXJET, LLC; ONESKY
FLIGHT, LLC; FLIGHT OPTIONS HOLDING I, INC.,
          *Plaintiffs/Counter-Defendants-Appellants*,

 *v.*

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL
1108; INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
AIRLINE DIVISION,
          *Defendants/Counter-Claimants-Appellees*.

> No. 17-3188

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:16-cv-00732—James S. Gwin, District Judge.

Argued:  October 5, 2017

Decided and Filed:  October 16, 2017

Before:  SUTTON, DONALD, and THAPAR, Circuit Judges.

---

#### COUNSEL

**ARGUED:**  W. Chris Harrison, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.,
Memphis, Tennessee, for Appellants.  James Petroff, BARKAN MEIZLISH, LLP, Columbus,
Ohio, for Appellees.  **ON BRIEF:**  W. Chris Harrison, Audrey M. Calkins, Zachary W. Hoyt,
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., Memphis, Tennessee, for
Appellants.  James Petroff, Trent R. Taylor, BARKAN MEIZLISH, LLP, Columbus, Ohio,
Nicolas M. Manicone, Deirdre Hamilton, INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, Washington, D.C., for Appellees.

---

**OPINION**

---

THAPAR, Circuit Judge.   Bad weather causes turbulence.   As it turns out, so does merging two luxury airlines.   A few years ago, Flight Options announced that it would acquire and merge operations with Flexjet.   The airlines and their pilots' union have been fighting ever since—and have become frequent fliers in this circuit.   This is the second time the parties have been before us this year.   Their first appeal was about how to combine the pilots' seniority lists. *See Flight Options, LLC v. Int'l Bhd. of Teamsters, Local 1108*, 863 F.3d 529 (2017).   This appeal is about how to integrate the pilots under one collective-bargaining agreement.

I.

The International Brotherhood of Teamsters has represented the Flight Options pilots for over ten years.   And when Flight Options and Flexjet announced a merger, the Flexjet pilots elected the Teamsters to represent them too.   Now the airlines and the union have to find a way to fold the Flight Options and Flexjet pilots into one labor group.

Flight Options and the union already have a collective-bargaining agreement that says what should happen in the event of a merger.   Section 1.5(c)(4) requires the airlines and the union to modify the agreement "in those respects necessary to permit the integration" of new pilots.   The parties have nine months to execute a modified agreement.   If they reach an impasse, Section 1.5(c)(4) mandates that they work it out in binding arbitration.

One snag:   The existing collective-bargaining agreement also became "amendable" under the Railway Labor Act shortly after the airlines merged.   And after the agreement became amendable, either party could propose broad changes affecting the pilots' rates of pay and working conditions. *See* 45 U.S.C. § 156.   To do so, one party need only serve the other with notice under Section 6 of the Act. *Id.*   Once notice is served, the parties must hold their first conference within thirty days. *Id.*   Sure enough, the union served the airlines with notice just before the parties began their Section 1.5(c)(4) negotiations.

So the parties face two duties to bargain. And they disagree about how those duties interact. The airlines maintain that the parties must resolve their Section 1.5(c)(4) negotiations *before* turning to the union's Section 6 proposals. But the union thinks that both negotiations will address the same issues and should happen at the same time. Unsurprisingly, the parties' mandatory bargaining conferences have been unproductive. The union presented broad Section 6 proposals, while the airlines focused on the narrower issues they deem necessary for integration. The union eventually asked the district court for a preliminary injunction ordering the airlines to bargain the union's Section 6 proposals in good faith. The district court granted the injunction, and the airlines appealed.

## II.

Airlines and their unions must resolve their disputes consistent with the procedures in the Railway Labor Act. *Emswiler v. CSX Transp., Inc.*, 691 F.3d 782, 785 (6th Cir. 2012). The Act provides two procedural tracks: one for major disputes and one for minor disputes. *Consol. Rail Corp. v. Ry. Labor Execs.' Ass'n*, 491 U.S. 299, 302–04 (1989).

Major disputes relate to the formation of a collective-bargaining agreement or the effort to change the terms of a collective-bargaining agreement. *Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 723 (1945). In other words, a major dispute concerns "the acquisition of rights for the future, not [the] assertion of rights claimed to have vested in the past." *Id.* Parties to a major dispute must try to resolve it through private negotiation, and if necessary, mediation. *Wheeling & Lake Erie Ry. Co. v. Bhd. of Locomotive Eng'rs & Trainmen*, 789 F.3d 681, 690 (6th Cir. 2015). If both of those mechanisms fail, the parties must determine whether or not to proceed to arbitration. *Id.* at 690–91. But until the parties exhaust these procedures, they may not alter the status quo by implementing a contested change or striking. *Id.* at 691. If either party jumps the gun, the other can ask a federal court to step in and issue an injunction. *Id.*

Minor disputes, on the other hand, arise from disagreements about how an existing collective-bargaining agreement applies to a particular situation. *Id.* Again, the parties must first attempt to negotiate privately. *Id.* But if negotiations over a minor dispute fail, the parties *must*

proceed directly to binding arbitration. *Id.* The court plays no role in resolving minor disputes unless a party asks it to review the arbitrator's decision. *See Emswiler*, 691 F.3d at 785.

When a party claims a dispute is minor, it bears the burden of demonstrating that the resolution of the dispute involves interpreting the existing collective-bargaining agreement. *Consol. Rail Corp.*, 491 U.S. at 305–07. To carry this burden, the moving party must demonstrate that its action is "arguably justified" by the terms of the agreement. *Id.* at 306–07. But this burden is "relatively light"—so long as the party's proffered interpretation is not "frivolous or obviously insubstantial," the dispute is minor. *Id.* at 307.

The district court found that the dispute over the scope of Section 1.5(c)(4) negotiations was minor and left the issue for arbitration. But it assumed that the dispute over the *order* of negotiations was major. In the district court's view, the airlines had a "distinct duty to immediately engage in good faith bargaining under RLA Section 6" and could not "avoid Section 6 bargaining simply because they want to prioritize the arguably narrower category of Section 1.5(c)(4) issues." *Flight Options, LLC v. Int'l Bhd. of Teamsters*, No. 1:16-CV-00732, 2017 WL 343346, at *9 (N.D. Ohio Jan. 24, 2017). On appeal, the airlines argue that the dispute over the order of negotiations was minor and thus should have gone to arbitration. We review the district court's classification de novo. *CSX Transp., Inc. v. United Transp. Union*, 395 F.3d 365, 368 (6th Cir. 2005).

The district court assumed the parties' dispute was major simply because the union served a Section 6 notice. But that assumption was incorrect. A dispute can be minor even if it affects the parties' obligations under Section 6. *See, e.g., id.* The proper inquiry is whether the existing collective-bargaining agreement "controls the controversy." *Elgin*, 325 U.S. at 723.

So first, we consider whether the airlines claim they have a right under the existing collective-bargaining agreement to prioritize Section 1.5(c)(4) negotiations. *Consol. Rail Corp.*, 491 U.S. at 305. They do. The airlines say the collective-bargaining agreement does not apply to the Flexjet pilots until the parties complete Section 1.5(c)(4) negotiations. So, in their view, negotiating the union's Section 6 proposals, which involve rates of pay and work rules for both the Flight Options and Flexjet pilots, would be premature. Instead, according to the airlines, the

parties must wait until the Section 1.5(c)(4) negotiations fold the Flexjet pilots into the existing contract terms and *then* use the modified agreement as a baseline for negotiating those broader issues under Section 6. Thus the airlines claim that this dispute is minor, because it involves interpreting the collective-bargaining agreement.

But it is not enough that the airlines claim their dispute is minor. There remains the second question: whether their reading of the collective-bargaining agreement is arguably justified. *Id.* at 306–07. It is. Section 1.5(c)(4) states that "[u]ntil such time as a fully merged agreement is reached, either through bargaining or arbitration, the surviving air carrier may continue to operate the two carriers separately." That language arguably implies that the airlines do not have to bargain over Section 6 proposals involving *all* the pilots of the *combined* airlines until "such time as a fully merged agreement is reached." The airlines' argument is not frivolous: It is consistent with the contract's plain language. *See Airline Prof'ls Ass'n, Teamster Local Union 1224 v. ABX Air, Inc.*, 400 F.3d 411, 416–17 (6th Cir. 2005).

Our decision in *CSX Transportation, Inc.* is instructive on this point. There, a railroad claimed that a moratorium provision in its collective-bargaining agreement allowed it to delay bargaining under Section 6 for two years. 395 F.3d at 369. This court held the railroad's claim was arguably justified for two reasons: (1) the plain language of the agreement could be read to indicate that the union's Section 6 proposals should not progress, and (2) the union pointed to no conflicting language to cast doubt on that interpretation. *Id.* at 369–70. That none of the union's arguments "rested on the contract language written by the parties" was significant. *Id.* at 370. So too here. The union has failed to point to any language demonstrating that the Flexjet pilots do not need to be integrated into the existing collective-bargaining agreement before that agreement can be renegotiated under Section 6. Thus, given that the airlines' claim is consistent with the collective-bargaining agreement and the union has failed to point to any contradictory language of its own, the dispute is minor and the preliminary injunction must be vacated.[1]

---

[1]Because the preliminary injunction must be vacated under the Railway Labor Act, we need not address the airlines' argument that it also would have been barred under the Norris-LaGuardia Act.

In so holding, however, we express no opinion as to whether the airlines' argument will carry the day in arbitration. *Gen. Comm. of Adjustment, United Transp. Union, W. Md. Ry. Co. v. CSX R.R. Corp.*, 893 F.2d 584, 592 (3d Cir. 1990) (explaining that finding a position to be arguably justified "should not be taken to infer any judgment . . . on the merits" of the dispute); *see CSX Transp., Inc.*, 395 F.3d at 369 (noting that "[t]he facts . . . indicate that [the railroads' interpretation] may not be strong, but it is arguably justified"). Whether the terms of the collective-bargaining agreement do in fact allow the airlines to delay Section 6 negotiations must be determined in arbitration.

### III.

The airlines make two additional arguments. First, they ask that we strike any "advisory opinions" included in the district court's order. Second, they ask us to issue an advisory opinion of our own. We decline both invitations.

### A.

In its order, the district court characterized Flexjet as an "affiliate" of Flight Options and Flexjet LLC as the "parent" company of Flexjet Ltd. The district court also made several comments about the scope of Section 1.5(c)(4). The airlines argue that these are advisory opinions that violate Article III of the Constitution.

Article III prohibits federal courts from issuing opinions that do not resolve "actual controversies" or bring about change for the parties. *Muskrat v. United States*, 219 U.S. 346, 361 (1911); *see Chi. & S. Air Lines v. Waterman S.S. Corp.*, 333 U.S. 103, 113–14 (1948). Such opinions may arise where the parties are not adverse, the issue is moot, or the court cannot grant relief. *Princeton Univ. v. Schmid*, 455 U.S. 100, 102 (1982) (per curiam); *Hall v. Beals*, 396 U.S. 45, 48 (1969) (per curiam); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937). The district court's order is not an advisory opinion, and the airlines do not contend that it is. Instead, the airlines assert that the district court made various statements that constitute mini-advisory opinions. But the airlines have failed to provide any authority showing that it is this court's role to nitpick a district court's order sentence-by-sentence. Our job is "to correct wrong judgments, not to revise opinions." *Herb v. Pitcairn*, 324 U.S. 117, 126 (1945). And to the extent the

airlines worry about collateral estoppel with respect to Flexjet's corporate structure, their concerns are misplaced.  The district court's conclusion was not necessary to its judgment, and thus cannot be used to preclude future litigation of that issue.  *See Allen v. McCurry*, 449 U.S. 90, 94 (1980).

B.

Aside from modifying and renegotiating the collective-bargaining agreement, the parties had been negotiating a "Voluntary Separation Program" for the pilots.  It too has been the subject of litigation.  The district court held that the airlines had bargained in bad faith by failing to memorialize an oral agreement that the parties reached regarding this program.  The airlines ask us to reverse that conclusion.  But the parties have already settled this issue.  It is thus moot. *Int'l Union, United Auto., Aerospace, Agr. & Implement Workers of Am. v. Dana Corp.*, 697 F.2d 718, 721 (6th Cir. 1983) ("We cannot reach the merits of this appeal unless we find that the parties' Settlement Agreement did not render the case moot.  Generally, the settlement of a dispute between the parties does render the case moot.").

IV.

For the reasons set forth above, we **VACATE** the district court's preliminary injunction ordering the airlines to bargain over the union's Section 6 proposals, and **REMAND** for further proceedings consistent with this opinion.