RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0090p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 18-2267

JOSEPH EDWARD MARSHALL,

*Defendant-Appellant.*

───────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:17-cr-20813-1—Gershwin A. Drain, District Judge.

Decided and Filed:  March 26, 2020

Before:  SUTTON, BUSH, and READLER, Circuit Judges.

───────────────

**COUNSEL**

**ON BRIEF AND PETITION FOR REHEARING EN BANC:**  Richard M. Helfrick, Benton C. Martin, FEDERAL COMMUNITY DEFENDER, Detroit, Michigan, for Appellant. **ON BRIEF:**  Julie A. Beck, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

───────────────

**AMENDED OPINION**

───────────────

SUTTON, Circuit Judge.  "Wisdom too often never comes, and so one ought not to reject it merely because it comes late." *Henslee v. Union Planters Nat'l Bank & Tr. Co.*, 335 U.S. 595, 600 (1949) (Frankfurter, J., dissenting).  Joseph Marshall asked a district court to terminate his supervised release ahead of schedule.  The district court denied the request and Marshall appealed.  When we looked at the case the first time, we rejected the appeal for lack of

jurisdiction. On rehearing, we recognize that we have subject-matter jurisdiction over the appeal under 28 U.S.C. § 1291 and deny the claim on the merits.

I.

In 2008, Marshall pleaded guilty to conspiring to distribute oxycodone. *United States v. Marshall*, No. 6:07-cr-00111-DCR-REW (E.D. Ky. June 2, 2008). A district court sentenced him to 118 months of prison plus six years of supervised release. After completing his prison sentence, Marshall began supervised release in 2016. Even though required to stay in Kentucky, Marshall moved to Illinois, violating a release condition. To simplify things, the sentencing district court transferred jurisdiction over his supervised release to the Northern District of Illinois. The district court briefly revoked Marshall's release as punishment for the violation. It then imposed another five years of supervised release, to run concurrently with the nearly six years remaining on his initial sentence.

Marshall started the new term in April 2016. Later that year he moved again, this time to Michigan and this time with permission. The Northern District of Illinois transferred his case to the Eastern District of Michigan. For the next year, Marshall made positive strides, and the probation office took notice. It recommended an early end to his supervised release. Marshall filed an unopposed motion to end the supervision. But the court denied his request, reasoning that Marshall had completed little of the release term and had violated the conditions before. Marshall appealed.

II.

What statute provides us with jurisdiction to review a district court's decision to deny a motion for early termination of supervised release? Two possibilities come to mind: 18 U.S.C. § 3742, the statute that permits us to review "an otherwise final sentence," and 28 U.S.C. § 1291, the statute that provides a general grant of appellate jurisdiction to review "final" judgments.

In *United States v. Bowers*, the defendant asked the district court to reduce his sentence in a different setting, namely under 18 U.S.C. § 3582(c)(2). 615 F.3d 715, 717–19 (6th Cir. 2010). That statute gives district courts discretion to reduce certain defendants' sentences in light of

retroactive changes to the sentencing guidelines. *Id.* When the district court rejected his motion and declined to reduce Bowers' sentence, he appealed. *Id.* We recognized that § 1291 or § 3742(a) might provide us with "jurisdiction" over Bowers' appeal, *id.* at 718, whether because it involved a "final decision" under § 1291 or because it involved an "otherwise final sentence" under § 3742(a), *see id.* at 718–19, 722.

In trying to sort this out, we noted that the courts agreed that Congress enacted § 3742 in 1984 to serve as "the exclusive avenue through which a party can appeal a sentence." *Id.* at 719 (quotation omitted). Why? Because § 3742(a) describes just four sentencing errors a defendant may challenge. A defendant may appeal his sentence if it

> (1) was imposed in violation of law;
>
> (2) was imposed as a result of an incorrect application of the sentencing guidelines; or
>
> (3) is greater than the sentence specified in the applicable guideline range to the extent that the sentence includes a greater fine or term of imprisonment, probation or supervised release than the maximum established in the guideline range, or includes a more limiting condition of probation or supervised release under section 3563(b)(6) or (b)(11) than the maximum established in the guideline range; or
>
> (4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.

18 U.S.C. § 3742(a). If we allowed defendants to appeal their sentences under § 1291, we reasoned, that might allow them to "circumvent the conditions imposed by 18 U.S.C. § 3742." *Bowers*, 615 F.3d at 719 (quotation omitted). Section 3742 as a result "tightly circumscribed" our "jurisdiction to hear appeals of 'sentences.'" *Id.*

Looking beyond direct appeals, we noted that all circuits but one, in decisions starting in the early 1990s, had agreed that § 3742(a) governed the "jurisdiction" of appeals of a different sort for reducing a sentence: Criminal Rule 35(b) motions. *Id.* at 719–20. Seeing no "countervailing considerations that would justify treating these two discretionary sentence-reduction provisions differently," we decided that § 3742(a) limited our jurisdiction to hear Bowers' appeal. *Id.* at 722; *see* Sarah E. Welch, Comment, *Reviewing Leniency: Appealability of 18 U.S.C. § 3582(c)(2) Sentence Modification Motions*, 85 U. Chi. L. Rev. 1269, 1286–90

(2018). And since he failed to satisfy § 3742(a)'s conditions, we held that we lacked jurisdiction over the appeal. *Id.* at 726–28.

In the years just before *Bowers*, and most conspicuously in the years after it, the Supreme Court has become increasingly careful about the different uses of "jurisdiction." It's a "word," the Court has come to realize, of "many, too many, meanings." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998) (quotation omitted). Above all else, the Court has insisted that we exercise caution before using the word to characterize a federal statute as limiting a federal court's subject matter jurisdiction. *See, e.g.*, *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510–13 (2006); *Henderson v. Shinseki*, 562 U.S. 428, 434–36 (2011); *Gonzalez v. Thaler*, 565 U.S. 134, 141–143 (2012); *United States v. Kwai Fun Wong*, 575 U.S. 402, 408–11 (2015); *Fort Bend County v. Davis*, 139 S. Ct. 1843, 1849–50 (2019).

That is not lawyerly precision for its own sake. If we lightly treat federal statutes as placing limits on our subject-matter jurisdiction, we end up creating all kinds of needless complications for processing civil and criminal cases, including "harsh consequences" in many of them. *Fort Bend*, 139 S. Ct. at 1849 (alteration omitted). It can be especially harsh for the parties, as no one may forfeit or waive a court's subject-matter jurisdiction at the trial level—leading to new arguments on appeal, unanticipated debates on appeal, and outcome-changing results on appeal. *Arbaugh*, 546 U.S. at 514; *Kwai Fun Wong*, 575 U.S. at 409. And it can be difficult for the courts, as we "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party," even indeed in the face of a confession of error. *Arbaugh*, 546 U.S. at 514 (citation omitted); *Henderson*, 562 U.S. at 434.

It's usually a mistake, as one case after another now shows, to treat a statutory limit on our power as a statutory limit on our subject-matter jurisdiction. More often than not, the Court has explained, what might seem to be a limit on our subject-matter jurisdiction amounts to a "mandatory claim-processing rule" or a mandatory limit on our authority to grant a certain form of relief. *Fort Bend*, 139 S. Ct. at 1849. These rules of course still constrain a court's authority, but they are waivable and forfeitable limits on that authority. *Id.* They are meant to "promote the orderly progress of litigation," not to eliminate or expand "the classes of cases a court may

entertain." *Id.* at 1848–49 (quotation omitted). And they are limits we have no obligation to bring up on our own.

Hoping to make it easier to distinguish between such statutory limitations and to discourage most of them from being treated as restraints on our subject-matter jurisdiction, the Court created a clear-statement rule. Only "[i]f the Legislature clearly states that a prescription counts as jurisdictional," the Court explained, may we treat it as a limit on our subject-matter jurisdiction. *Id.* at 1850 (quotation omitted) (alteration omitted).

*Bowers*, on reflection, used "jurisdiction" in its traditional sense, not its subject-matter jurisdiction sense—just like most of the cases from that era and just like the many pre-*Arbaugh* cases dealing with § 3742. *Bowers* never mentions *Arbaugh*. The opinion never says whether § 3742(a) creates non-forfeitable and non-waivable limits or whether it creates limits that we must raise on our own. The opinion also does not apply a clear-statement rule in determining whether § 3742(a) limits the subject-matter jurisdiction of the federal courts.

On top of these considerations rest several others that suggest § 3742(a) imposes a mandatory limit on our power, not a subject-matter jurisdiction limit on our power. The statute shares qualities that look like a mandatory claim-processing rule. *Cf. Manrique v. United States*, 137 S. Ct. 1266, 1271 (2017). Congress enacted § 3742(a) to establish a "limited practice of appellate review of sentences in the Federal criminal justice system." *Bowers*, 615 F.3d at 719 (quotation omitted). A defendant cannot ignore § 3742(a)'s limitations any more than a party can avoid Title VII's charge-filing requirement or the Copyright Act's registration requirement—two other mandatory but non-jurisdictional limits on the power of the federal courts. *Fort Bend*, 139 S. Ct. at 1851; *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010).

Section 3742(a) also does not include the classic markers of a limit on our subject-matter jurisdiction. The provision speaks to what parties, not courts, must do. Statutes concerned with a party's "preconditions to relief" as opposed to a "court's authority" tend not to limit a court's subject-matter jurisdiction. *Fort Bend*, 139 S. Ct. at 1849–50 (quotation omitted); *see also Patchack v. Zinke*, 138 S. Ct. 897, 905–06 (2018); *Kwai Fun Wong*, 575 U.S. at 410; *Gonzalez*,

565 U.S. at 140–41; *Reed Elsevier*, 559 U.S. at 163–64.  That § 3742(a) never mentions a court's "jurisdiction," while not dispositive, inclines in the same direction.  *See Fort Bend*, 139 S. Ct. at 1850–51; *cf.* 28 U.S.C. §§ 1291, 1331, 1332.

Another provision in § 3742 adds doubt that the statute constrains subject-matter jurisdiction.  Section 3742(f) explains how appellate courts should dispose of the sentencing appeals that § 3742(a) allows. 18 U.S.C. § 3742(f).  If a sentence passes through one of § 3742(a)'s four gateways and the court concludes that the district court erred, § 3742(f) directs appellate courts to remand for further sentencing proceedings or for resentencing.  But if the court determines the sentence was "not described" by any of the categories, § 3742(f)(3) tells courts to "affirm the sentence."  It does not tell courts to "dismiss the appeal" or use other language conveying that § 3742(a)'s limitations have "jurisdictional consequences."  *Patchak*, 138 S. Ct. at 905.  If Congress has told us anything in this regard, it would seem to be that § 3742(a) does not constrain our subject-matter jurisdiction.

Last but not least, we do not lightly construe statutes to repeal earlier ones.  *Branch v. Smith*, 538 U.S. 254, 273 (2003) (Scalia, J.) (plurality).  Before 1984, when Congress enacted § 3742, the federal courts used § 1291 to review criminal appeals.  *Abney v. United States*, 431 U.S. 651, 657 (1977); *United States v. Ras*, 713 F.2d 311, 313 (7th Cir. 1983).  It's true that few sentencing appeals were brought in that era.  *Abney*, 431 U.S. at 656; *United States v. Tucker*, 404 U.S. 443, 447 (1972).  But when they were filed, § 1291 was the source of federal court subject-matter jurisdiction over them.  *Abney*, 431 U.S. at 657.  For many of the reasons just given, § 3742 did not displace that jurisdiction.

There are a few competing indicators, we must acknowledge.  Some come from language in Supreme Court decisions.  In *United States v. Ruiz*, the Court said that § 3742(a) limits appellate courts' "jurisdiction." 536 U.S. 622, 627–28 (2002).  And in *Koon v. United States*, 518 U.S. 81, 96 (1996), the Court more fully said this:

> Before the Guidelines system, a federal criminal sentence within statutory limits was, for all practical purposes, not reviewable on appeal. *Dorszynski v. United States*, 418 U.S. 424, 431 (1974) (reiterating "the general proposition that once it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end"); *United States v. Tucker*, 404

U.S. 443, 447 (1972) (same).  The Act altered this scheme in favor of a limited appellate jurisdiction to review federal sentences.  18 U.S.C. § 3742.  Among other things, it allows a defendant to appeal an upward departure and the Government to appeal a downward one.  § 3742(a), (b).

But these pre-*Arbaugh* references to "jurisdiction" in *Ruiz* and *Koon* have plenty of company in other Court decisions.  They indeed look just like many other "drive-by jurisdictional" rulings that the Court has warned us not to follow.  *Steel Co.*, 523 U.S. at 91. Consistent with that warning, we have lots of cases in which we recharacterized earlier decisions based on the *Arbaugh* line of cases.  *E.g.*, *Carter v. Hickory Healthcare Inc.*, 905 F.3d 963, 967– 68 (6th Cir. 2018); *Brentwood at Hobart v. NLRB*, 675 F.3d 999, 1004 (6th Cir. 2012); *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005–07 (6th Cir. 2009); *Thomas v. Miller*, 489 F.3d 293, 297–98 (6th Cir. 2007); *United States v. Caruthers*, 458 F.3d 459, 472 n.6 (6th Cir. 2006).  Some of them even involved post-*Arbaugh* decisions that did not account for the clear-statement rule. *Emswiler v. CSX Transp., Inc.*, 691 F.3d 782, 788–90 & n.1 (6th Cir. 2012) (overruling *Stephens v. Ret. Income Plan for Pilots of U.S. Air, Inc.*, 464 F.3d 606 (6th Cir. 2006)); *Maxwell v. Dodd*, 662 F.3d 418, 421 (6th Cir. 2011) (overruling *Allison v. City of East Lansing*, 484 F.3d 874 (6th Cir. 2007)).

In a similar way, dozens of circuit cases, including one of our own, have said that § 3742(a) limits courts' "jurisdiction" in the context of Rule 35 appeals.  *See*, *e.g.*, *United States v. McAndrews*, 12 F.3d 273, 276–78 (1st Cir. 1993); *United States v. Doe*, 93 F.3d 67, 67–68 (2d Cir. 1996) (per curiam); *United States v. McKnight*, 448 F.3d 237, 238 (3d Cir. 2006); *United States v. Davis*, 679 F.3d 190, 193–94 (4th Cir. 2012); *United States v. Doe*, 932 F.3d 279, 281 (5th Cir. 2019); *United States v. Moran*, 325 F.3d 790, 792 (6th Cir. 2003); *United States v. McDowell*, 117 F.3d 974, 977–78 (7th Cir. 1997); *United States v. Rublee*, 655 F.3d 835, 836–37 (8th Cir. 2011); *United States v. Arishi*, 54 F.3d 596, 596–98 (9th Cir. 1995); *United States v. McMillan*, 106 F.3d 322, 324 n.4 (10th Cir. 1997); *United States v. Chevarria-Herrara*, 15 F.3d 1033, 1034–36 (11th Cir. 1994).  But these cases merely return us to the same question presented in construing *Bowers*:  In which sense was the court using "jurisdiction"?  That many of these cases pre-date *Arbaugh* and that none of them applies the clear-statement rule alleviates any

anxiety that these courts treated the statute as establishing limits on our subject-matter jurisdiction and displaced § 1291 in the process.

One other reality:  The federal courts have treated a few statutes as affecting the courts' subject-matter jurisdiction even though they address the parties, not the courts.  Consider 28 U.S.C. § 2344 as one example.  "Any party aggrieved by the final order," it says, "may, within 60 days after its entry, file a petition to review the order in the court of appeals wherein venue lies."  *Id.*  Yet "lower court decisions have uniformly held that the Hobbs Act's 60-day time limit for filing a petition for review of certain final agency decisions, 28 U.S.C. § 2344, is jurisdictional."  *Henderson*, 562 U.S. at 437.  Consider 28 U.S.C. § 1253 as another example.  This section permits "any party" to "appeal to the Supreme Court from an order granting or denying . . . an interlocutory or permanent injunction in any civil action . . . required by any Act of Congress to be heard and determined by a district court of three judges."  Both circuits to consider how this provision works determined that it created exclusive jurisdiction in the Supreme Court to hear appeals of preliminary injunctions from three-judge district courts.  *Bogue v. Faircloth*, 441 F.2d 623 (5th Cir. 1971) (per curiam); *Blay v. Young*, 509 F.2d 650, 650–651 (6th Cir. 1974) (per curiam).  But these minor exceptions, assuming they accurately apply the *Arbaugh* test, merely confirm the general rule—that statutes that speak to parties, not courts, generally impose mandatory limits on the courts, not subject-matter jurisdictional limits.

All in all, *Bowers* is best read as confining our power to grant certain types of relief in sentencing appeals, not as confining our subject-matter jurisdiction over them.  Section 1291 thus remains the main source of our subject-matter jurisdiction in these appeals.

III.

That leaves the merits.  Marshall claims that the district court abused its discretion in denying his request to lower his supervised-release term.  Keep in mind that he did not raise this claim on direct review of the most recent imposition of his sentence.  And keep in mind that he has not filed a § 2255 motion that his supervised-release term violates the U.S. Constitution or a federal statute.  His claim instead is that, because of recent good behavior, the district court should have granted his request to end the last three years of his term of supervised release.

While we have subject matter jurisdiction over the appeal under § 1291, it does not follow that we necessarily have authority to grant relief.

Marshall mainly argues that § 3742(a)(1) permits us to grant relief because his sentence "was imposed in violation of law." He identifies three types of errors in the district court's decision that might qualify as a "violation of law." It (1) relied on clearly erroneous facts, (2) failed to consider the factors listed in 18 U.S.C. § 3553(a), and (3) did not allow Marshall to allocute in violation of Criminal Rule 32.1(c). But, in doing so, he leaps over the first question. Did the district court make these mistakes while *imposing* a sentence?

Section 3742(a)(1) allows Marshall to appeal a sentence that "was imposed in violation of law." That means he must point to errors that occurred when the court sentenced him or modified his sentence. This understanding is the only way to make sense of how other statutes use "impose." Look at § 3557, which provides: "The review of a sentence imposed pursuant to section 3551 is governed by the provisions of section 3742." 18 U.S.C. § 3557. Section § 3551 in turn explains what types of punishment a district court may impose on an individual or organization "found guilty of an offense." *Id.* § 3551(b), (c). In no way does it suggest "imposing a sentence" refers to anything other than the act of sentencing a defendant to punishment.

Other statutes confirm the point. Take § 3582: "The court, in determining whether to impose a term of imprisonment . . . shall consider the factors set forth in section 3553(a)." *Id.* § 3582(a). The supervised release statute gives the same impression: "The court, in imposing a sentence to a term of imprisonment . . . may include [supervised release] as a part of the sentence." *Id.* § 3583(a).

Absent a reason to think otherwise, we expect that Congress uses a word in a consistent way throughout a Title of the United States Code. *See Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302, 319–20 (2014); Antonin Scalia & Bryan A. Garner, *Reading Law* 172 (2012). We see no indication that Congress used "impose" differently in § 3742(a) from its use in § 3557, § 3553, § 3582, or § 3583—or other provisions as well. *See, e.g.*, *id.* §§ 3551(b), 3552(a), 3554, 3555, 3556, 3558, 3572(a), 3585(b). The inference is especially appropriate when the

neighboring provisions, as here, all came into existence at the same time. Sentencing Reform Act, Pub. L. 98-473, 98 Stat 1837 (1984).

Nor may we treat the district court's decision to deny Marshall's request for termination of his supervised release as re-imposing Marshall's sentence. The relevant statutes distinguish between modifying a sentence and imposing a sentence. Section 3582(c) says a "court may not modify a [sentence] once it has been *imposed* except" in certain limited circumstances. 18 U.S.C. § 3582(c) (emphasis added). The supervised release statutes fit the same mold. A district court may "extend a term of supervised release if less than the maximum . . . was previously imposed." *Id.* § 3583(e)(2). And Congress has used the term "reimpose" elsewhere, 15 U.S.C. § 7004(c)(1), re-enforcing our hesitance to give "impose" anything other than its ordinary meaning.

Even if one could view modifying a sentence as imposing a new sentence, it makes no sense to say *declining* to modify a sentence "imposes" a sentence. *Doe*, 932 F.3d at 281 ("When the district court denies a [sentence reduction] motion, it does not impose[] a sentence; it declines to impose[] one." (quotation omitted) (alteration in original)); *accord Dillon v. United States*, 560 U.S. 817, 831 (2010). Giving the word this double meaning would mean district courts have far more work to do than they realized—or we have long assumed. If a district court "imposes" a sentence when it declines to modify an existing sentence, then § 3553 requires it to repeat certain procedural steps already performed at the defendant's initial sentencing. *See* 18 U.S.C. § 3553. Most onerous of all, a court would have to "state in open court the reasons for its imposition of the particular sentence" every time a defendant moves for a discretionary reduction. *Id.* § 3553(c).

Nor should we jump to the conclusion that courts of appeals have authority to review all discretionary rulings by district court judges, whether under § 3742 or some other statute. Keep in mind that, during the days of mandatory guidelines, "every circuit . . . held that [§ 3742] does *not* authorize a defendant to appeal a sentence [on the ground] the district court abused its discretion in refusing to depart." *Ruiz*, 536 U.S. at 627 (citations omitted). And it's worth remembering that before 1984, defendants could rarely, if ever, challenge their sentences. *Tucker*, 404 U.S. at 446–47. "Indeed, for a century after [the Supreme Court] was established,

no appeal as of right existed in criminal cases, and as a result, appellate review of criminal convictions was rarely allowed." *Abney*, 431 U.S. at 656. Ever since *United States v. Booker*, it is true, courts of appeals have become used to reviewing sentencing decisions for an abuse of discretion. 543 U.S. 220 (2005). But that comfort is not a license to ignore § 3742's limitations or to treat it as a cure-all. For the truly egregious mistakes, § 2255 and writs of mandamus stand as last lines of defense. *See United States v. Spilotro*, 884 F.2d 1003, 1005–06 (7th Cir. 1989).

That leaves the possibility that there was a pre-1984 practice for such review that § 3742 did not displace. In other words, it's possible that, before 1984, appellate courts reviewed decisions by district court judges not to reduce or end parole terms, a useful analogy to today's supervised release terms. The parties have not briefed the point. And we are not aware of any such practice.

We need not finally resolve the point today. Even if we had such authority, it would make no difference to Marshall's appeal. The district court did not abuse its discretion in denying the motion. As the court pointed out, Marshall violated his conditions of supervised release once before, a legitimate reason for denying a request to end his supervised-release term now.

In answering Marshall's challenge, we offer no opinion on whether appellate courts have authority to review First Step Act appeals. That's a matter for another day. Whatever else that matter is, it is not one that turns on the subject-matter jurisdiction of the federal courts.

We affirm.