RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0125p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

                *Plaintiff-Appellee*,

    *v.*

MARK HACK,

               *Defendant-Appellant*.

> No. 19-6278

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 3:10-cr-00082-5—Charles R. Simpson, III, District Judge.

Decided and Filed: June 3, 2021

Before: STRANCH, BUSH, and READLER, Circuit Judges.

_____

## COUNSEL

_____

**ON BRIEF:** C. Fred Partin, C. FRED PARTIN & ASSOCIATES, Louisville, Kentucky, for Appellant. Nicole S. Elver, UNITED STATES ATTORNEY'S OFFICE, Louisville, Kentucky, for Appellee.

_____

## OPINION

_____

JANE B. STRANCH, Circuit Judge. Mark Hack appeals the district court's order denying his motion to modify the restitution order in his case. On appeal, the Government filed a motion to dismiss for lack of jurisdiction, which a motions panel denied, holding that we have jurisdiction to hear Hack's appeal under 28 U.S.C. § 1291. We now consider the issue the motions panel did not reach: whether Hack's plea agreement, which contains an appeal waiver

provision, bars him from pursuing the relief he seeks on appeal. Because we conclude that it does, we **AFFIRM** the district court's order.

In 2013, Hack was convicted of one count of conspiracy to commit bank fraud, mortgage fraud, and wire fraud. He pleaded guilty after entering a plea agreement containing an appeal waiver. In addition to terms of imprisonment and supervised release, the district court ordered Hack to pay $803,420 in restitution to two mortgage companies. The Mandatory Victims Restitution Act (MVRA) requires these payments. 18 U.S.C. § 3664(f)(1)(A). It also requires the district court to "specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid." *Id.* § 3664(f)(2). The district court set a payment schedule during Hack's imprisonment and then stated:

> Upon commencement of the term of supervised release, the probation officer shall review your financial circumstances and recommend a payment schedule on any outstanding balance for approval by the court. Within the first 60 days of release, the probation officer shall submit a recommendation to the court for a payment schedule, for which the court shall retain final approval.

This language complies with the MVRA. *See United States v. Ayantayo*, 20 F. App'x 486, 488 (6th Cir. 2001). The record, though, does not reflect that the district court ever set a postrelease payment schedule (or that the probation officer ever recommended one).

After completing his prison term, and during his period of supervised release, Hack filed a motion to modify the restitution order. He explained that he had "a one-time opportunity through family, friends and independent bank financing/funding to obtain reduced lump sum amounts to settle and pay the victims either through the Court Clerk or directly to the victims" and that "[s]uch an opportunity would not be financially feasible or available" if he had to arrange for the settlement funds and was "required to continue to make restitution payments and also to separately repay the loans/funding at the same time." Hack proposed to pay the two mortgage companies $100,000 and $28,000 in lump sums, attaching declarations from the companies' representatives stating that they preferred to receive the lump-sum payments instead of "incremental payments over the next several years." The Government opposed Hack's motion.

The district court denied the motion after concluding that it did "not have the authority under the MVRA to modify its final Restitution Order into two reduced lump-sum restitution payments." Hack challenged this determination, framing the issue on appeal as: "[d]oes the district court have discretion to modify a judgment of restitution under 18 U.S.C. §§ 3663, 3663A, and 3664, especially when it never set a schedule for restitution payments?" The Government filed a motion to dismiss Hack's appeal, arguing that we do not have jurisdiction to hear it. It also contended, in that motion and in its merits brief, that Hack's plea agreement waived any ability to appeal the restitution portion of the judgment.

The Government's jurisdictional argument relied primarily on *United States v. Marshall*, 949 F.3d 262 (6th Cir. 2020), which was published 17 days before the Government's motion. The Government characterized *Marshall* as barring a defendant from appealing "every time [he] loses a motion to reduce his supervised-release term," a rule it contended is analogous to Hack's restitution argument. But that opinion was then withdrawn, amended, and superseded on rehearing. *See United States v. Marshall*, 954 F.3d 823 (6th Cir. 2020). Our new decision determined that 28 U.S.C. § 1291 (which generally grants appellate jurisdiction to review "final" judgments), as opposed to 18 U.S.C. § 3742 (which allows review of "an otherwise final sentence"), confers jurisdiction over an appeal from a district court's decision to deny a motion to modify supervised release terms. *Id.* at 825, 829. We explained that while § 3742 "confin[es] our power to grant certain types of relief in sentencing appeals," it does not "confin[e] our subject-matter jurisdiction over them." *Id.* at 829; *see United States v. Bowers*, 615 F.3d 715, 719–22 (6th Cir. 2010)). The Government acknowledged this change in the governing law in a Rule 28(j) letter, all but conceding that we have jurisdiction to hear Hack's appeal. The motions panel's order explained that the rule elucidated in *Marshall*'s later iteration applies to Hack's analogous challenge to the restitution order, but deferred consideration of the Government's other argument concerning the appeal waiver in Hack's plea agreement. We turn to that issue now.

Though our law is not a model of clarity, our cases generally hold that a valid appeal waiver does not deprive us of statutory jurisdiction. *See United States v. Caruthers*, 458 F.3d 459, 472 n.6 (6th Cir. 2006) (reasoning that "an appellate waiver does *not* divest this court of

jurisdiction"), *abrogated on other grounds by Cradler v. United States*, 891 F.3d 659 (6th Cir. 2018); *Jones v. United States*, 689 F.3d 621, 624 n.1 (6th Cir. 2012) ("[P]lea-agreement waivers are not jurisdictional arguments . . . ."); *United States v. Camp*, 903 F.3d 594, 597 n.1 (6th Cir. 2018); *United States v. Hampton*, 732 F.3d 687, 690 (6th Cir. 2013). Most of our sister circuits have held similarly. *See United States v. Gwinnett*, 483 F.3d 200, 203 (3d Cir. 2007); *United States v. Story*, 439 F.3d 226, 230 (5th Cir. 2006); *United States v. Mason*, 343 F.3d 893, 893 (7th Cir. 2003); *United States v. Jacobo Castillo*, 496 F.3d 947, 949 (9th Cir. 2007) (en banc); *United States v. Hahn*, 359 F.3d 1315, 1322–24 (10th Cir. 2004) (en banc); *United States v. Johnson*, 750 F. App'x 975, 976 n.1 (11th Cir. 2019) (citing *United States v. Howle*, 166 F.3d 1166, 1169 (11th Cir. 1999)); *United States v. Hunt*, 843 F.3d 1022, 1026 n.1 (D.C. Cir. 2016). None of the other circuits have explicitly held to the contrary. *See, e.g.*, *United States v. Hines*, 196 F.3d 270, 272 (1st Cir. 1999) (describing a possible "case in which a valid waiver deprives us of 'jurisdiction' and creates a possible objection to bypassing waiver and deciding the merits" while noting that "this court's jurisdiction to decide a timely appeal from a sentence is established by statute"). So, consistent with our earlier cases and the Government's arguments, "[t]he enforcement of [Hack's] appellate waiver[] fits comfortably in the rubric of a mere claim-processing rule" and so should not be viewed as implicating our statutory jurisdiction. *Caruthers*, 458 F.3d at 472 n.6.

Typically, "a waiver of the right to appeal a 'sentence' . . . includ[es] a 'restitution' order," *United States v. Riccardi*, 989 F.3d 476, 489 (6th Cir. 2021) (collecting cases), including certain subsequent modifications to such an order (such as one made after the total amount of loss is confirmed), *see United States v. Gibney*, 519 F.3d 301, 305–06 (6th Cir. 2008). *United States v. Smith*, 344 F.3d 479 (6th Cir. 2003), however, provides a notable exception. We held that Smith's plea agreement, which waived the right "to appeal any sentence which is within the parameters of this agreement," did not cover the right to appeal the calculation of a restitution amount. *Id.* at 483. That agreement did not specify a calculation method and, construing this ambiguity against the Government, we held that Smith had not waived his ability to challenge the district court's calculation on appeal. *Id.* In *Riccardi*, by contrast, because the waiver "unambiguously cover[ed] the right to appeal any sentence without limitation" and did "not

cover only a sentence within the plea agreement's 'parameters,'" it was enforceable. 989 F.3d at 489.

> The relevant portion of the waiver provision in Hack's plea agreement reads:

> Defendant is aware of his right to appeal conviction and that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The Defendant knowingly and voluntarily waives the right (a) to directly appeal his conviction, the resulting sentence, and any claims of ineffective assistance of counsel pursuant to Fed. R. App. P. 4(b) and 18 U.S.C. § 3742 . . . .

This resembles the language of the plea agreement discussed in *Riccardi*. *See id.* (alterations in original) ("Her plea agreement unambiguously stated that she 'expressly and voluntarily waive[d]' the right 'to appeal the conviction or sentence[.]'"). Unlike *Smith*, it is not limited to a sentence expressly within the agreement's parameters and instead broadly refers to "the resulting sentence," of which restitution is part. *See id.* And Hack's agreement does not list any exceptions to the appeal waiver in which his present appeal might fall. *See id.* at 489–90. As a result, Hack's plea agreement waives his ability to appeal the restitution order.

True, Hack's plea agreement does specify that he cannot appeal his sentence "pursuant to Fed. R. App. P. 4(b) and 18 U.S.C. § 3742," and under *Marshall*, we have jurisdiction over Hack's appeal under 18 U.S.C. § 1291. *See* 954 F.3d at 829. But once in this court, Hack's merits arguments necessarily invoke § 3742. That makes sense because an appeal under § 3742 is Hack's only avenue to seek modification of the restitution order in this scenario. Once imposed, a restitution order is a final judgment. 18 U.S.C. § 3664(o). It can be changed in several ways, but only one could apply here: an appeal of the restitution order under § 3742 on the ground that it was imposed in violation of law, just as a defendant could appeal any other final sentence. *See id.* §§ 3664(o)(1)(B); 3742(a). Indeed, that is how Hack describes his argument on appeal. But Hack's plea agreement bars him from taking an appeal under § 3742. Therefore, Hack has waived his right to appeal the district court's denial of his motion to modify the restitution order.

In any case, the district court was correct to analyze what relief was available under the MVRA. Hack proposed to pay two lump sums that would total less than the amount specified in the restitution order. The MVRA states that the restitution amount must be "the full amount of

each victim's losses." 18 U.S.C. § 3664(f)(1)(A); *see also id.* § 3663A(b)(1)(B). Parties generally cannot bargain around that stricture. "Although restitution does resemble a judgment 'for the benefit of' the victim, . . . [t]he victim has no control over the amount of restitution awarded or over the decision to award restitution." *Kelly v. Robinson*, 479 U.S. 36, 52 (1986). Therefore, "a private settlement between a criminal wrongdoer and his victim releasing the wrongdoer from further liability does not preclude a district court from imposing a restitution order for the same underlying wrong." *United States v. Bearden*, 274 F.3d 1031, 1041 (6th Cir. 2001). The companies Hack defrauded say that they would prefer Hack's proposed arrangement at this stage, but that preference is not binding on the district court.

Hack is correct, however, that the failure to set a full restitution payment schedule is error. *United States v. Davis*, 306 F.3d 398, 425–26 (6th Cir. 2002). The district court did impose a schedule, albeit an incomplete one; it specified quarterly payments during Hack's prison term but then never set the subsequent payments. In certain circumstances, the district court can bifurcate the creation of a payment schedule, with the restitution imposed at sentencing and the precise schedule issued later, but both portions must be completed. *Id.* at 426. When we have previously found that "the terms of [a defendant's] schedule are unclear" and that the district court may not have considered the factors outlined in 18 U.S.C. § 3664(f)(2) in setting a schedule, we have remanded the case "so that the district court, pursuant to the express terms of the MVRA, can set a payment schedule." *Id.*; *see also United States v. Geedi*, 490 F. App'x 755, 760 (6th Cir. 2012). The MVRA offers district courts discretion in determining the schedule's precise terms, "set[ting] forth numerous possible methods of payment, including a lump-sum payment, installments, periodic nominal amounts, or a combination of methods." *United States v. Bogart*, 576 F.3d 565, 574 (6th Cir. 2009); *see also United States v. Perry*, 360 F.3d 519, 535 (6th Cir. 2004) ("[T]he statute gives sentencing courts significant flexibility to tailor restitution orders to particular circumstances."). This is distinct from modifying the amount of restitution. If the district court determines that Hack's new ability to obtain lump sums constitutes a "material change in [his] economic circumstances that might affect [his] ability to pay restitution," for instance, it could "adjust the payment schedule" or "require immediate payment in full," but it could not modify the total amount to be paid. 18 U.S.C. § 3664(k). Again, none of the other methods of altering an order of restitution would apply. *See id.* § 3664(o).

Hack should be able to know how much he will be required to pay during the remainder of the 20-year period after his release from prison and when he will be required to pay it. *See id.* § 3613(b). The companies he defrauded are entitled to know the same. Thus, we encourage the district court to set a payment schedule in an expeditious manner, conducting any proceedings it deems necessary to ensure that the schedule it institutes accounts for the factors that § 3664(f)(2) delineates and the circumstances of the case.

For these reasons, we **AFFIRM** the district court's order denying Hack's motion to modify the restitution order.