NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0455n.06

**No. 20-6208**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Oct 07, 2021<br>DEBORAH S. HUNT, Clerk |
|  | ) |  |
| Plaintiff-Appellee, | ) |  |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
| BILLY MITCHELL, | ) | COURT FOR THE WESTERN |
|  | ) | DISTRICT OF KENTUCKY |
| Defendant-Appellant. | ) |  |
|  | ) |  |

BEFORE: ROGERS, GRIFFIN, and THAPAR, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Billy Mitchell conditionally pleaded guilty to various drug-trafficking and firearms charges after the district court denied in large part his motions to suppress evidence. He claims on appeal that the district court should have: (1) held law enforcement officials lacked probable cause to arrest him; (2) suppressed the physical fruits that resulted from a pre-*Miranda* statement; and (3) concluded that a search warrant did not authorize the seizure of certain firearms. We disagree and affirm.

I.

Following a controlled drug buy in March 2017, law enforcement officials with the Bowling Green-Warren County Drug Task Force identified Mitchell as a methamphetamine trafficker. They obtained and executed a search warrant of Mitchell's residence that same day; the search yielded a handgun in plain view on a bedroom dresser. During the search, a neighbor told

officers that "Mitchell had just drove by the house." Given the firearm and Mitchell's known status as a felon (he had prior drug-related convictions), the officers ordered a traffic stop. But before that could occur, Mitchell exited his vehicle in a parking lot, and he was arrested on foot.

Officers secured Mitchell in a police cruiser. Before advising him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), however, a detective asked Mitchell about a safe that was discovered in his residence—he wanted to know its combination and contents. Mitchell provided the combination, and inside officers discovered distribution amounts of cocaine and methamphetamine. After detaining Mitchell, officers approached Mitchell's car and smelled marijuana "coming from inside the vehicle." On that basis, they conducted a search of the car and discovered additional cocaine and methamphetamine. Officers later located three more firearms, two in the house and one in his vehicle.

A grand jury indicted Mitchell on numerous drug-trafficking and firearms charges. He filed motions to suppress statements and physical evidence, which a magistrate judge recommended granting in part and denying in part following an evidentiary hearing. Specifically, the magistrate judge concluded: (1) the warrantless arrest was supported by probable cause, (2) the warrantless search of Mitchell's vehicle was supported by probable cause, (3) Mitchell's safe-combination statement should be suppressed as violative of *Miranda*, and (4) the non-testimonial evidence gathered from the safe should not be suppressed and nonetheless would have been inevitably discovered. Over Mitchell's objections, the district court adopted the report and recommendation in full. Mitchell then conditionally pleaded guilty to eight of the nine charged crimes (with the government agreeing to dismiss the remaining count) but retained his right to appeal the denial of his motions to suppress evidence. The district court sentenced Mitchell to a total of 200 months' imprisonment.

II.

Mitchell contends the district court erred in three different respects when it denied his motions to suppress.[1] "When reviewing a district court's ruling on a motion to suppress, we will reverse findings of fact only if they are clearly erroneous. Legal conclusions as to the existence of probable cause are reviewed de novo. When the district court has denied the motion to suppress, we review all evidence in a light most favorable to the Government." *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006) (brackets, internal citations, and quotation marks omitted).

A.

Defendant first asserts he was arrested without probable cause. As a preliminary matter, we note that although Mitchell raised this lack-of-probable-cause argument in his initial motion to suppress, he did not specifically object to the magistrate judge's resolution of it. "Generally, the failure to file specific objections to a magistrate's report constitutes a [forfeiture] of those objections." *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc). So, he has forfeited that issue on appeal. *United States v. Crawford*, 943 F.3d 297, 310–11 (6th Cir. 2019). But the government did not identify Mitchell's forfeiture, let alone request that we resolve this issue on that ground; so we will address the merits of Mitchell's appeal instead. *See United States v. White*, 874 F.3d 490, 495 (6th Cir. 2017) ("Loath to raise issues for the parties, much less resolve cases on them, we therefore proceed to the merits.").

"To determine whether an officer had probable cause for an arrest, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *District of Columbia v.*

---

[1]He does not appeal the district court's holding that probable cause existed to search his vehicle.

*Wesby*, 138 S. Ct. 577, 586 (2018) (internal quotation marks omitted). This is a totality-of-the-circumstances inquiry that "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* (citation omitted).

Mitchell contends that mere discovery of a gun in his bedroom (that he shared with his wife) was not enough to establish probable cause. But our caselaw says otherwise with respect to what is required to establish constructive possession of a firearm. *See, e.g.*, *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998). "Proof that the person has dominion over the premises where the firearm is located is sufficient to establish constructive possession." *Id.* (internal quotation marks omitted). Mitchell had dominion over his own bedroom, thereby giving law enforcement officials reason to believe that Mitchell possessed the firearm. And they knew, among other things, that Mitchell was a felon prohibited from possessing a firearm, that he was the subject of an ongoing narcotics investigation, and that his neighbor positively identified him driving past his house while it was being searched. Viewing this evidence in the light most favorable to the government, *Coffee*, 434 F.3d at 892, probable cause existed to arrest Mitchell.

B.

In his second issue on appeal, Mitchell claims the district court erred when it failed to suppress the contents of the safe as fruits of the *Miranda* violation. Under *United States v. Patane*, 542 U.S. 630 (2004), physical evidence found because of voluntary, un-*Mirandized* statements is not subject to suppression. *Id.* at 634 (plurality op.) ("[T]he *Miranda* rule protects against violations of the Self-Incrimination Clause, which, in turn, is not implicated by the introduction at trial of physical evidence resulting from voluntary statements. . . ."); *id.* at 645 ("Admission of nontestimonial physical fruits . . . does not run the risk of admitting into trial an accused's coerced incriminating statements against himself.") (Kennedy J., concurring in the judgment). Mitchell

argues the district court wrongly applied this rule because the court did not make a voluntariness determination. *Id.* at 637, 644 (plurality op.). But it necessarily did so when it stated *Patane*'s rule—"[i]ntroduction of [a] nontestimonial fruit of a *voluntary* statement . . . does not implicate the Self-Incrimination Clause," *id.* at 643 (plurality op.) (emphasis added)—and then correctly applied it. *See, e.g.*, *United States v. Gale*, 468 F.3d 929, 941 (6th Cir. 2006) ("There is a presumption in the law that a district court knows and applies the law correctly, and a similar presumption must extend to the court's factual review of the record." (internal citation omitted)). And it did so for good reason—the video of Mitchell's giving of the combination while in custody (which was presented at the evidentiary hearing) and the totality of the circumstances reveal none of the hallmarks of "objectively coercive activity." *United States v. Craft*, 495 F.3d 259, 263 (6th Cir. 2007).

Regardless, even if Mitchell could demonstrate his statement was "actually coerced," *Patane*, 542 U.S. at 644, we agree with the district court that the safe's contents would have been inevitably discovered. This "exception to the exclusionary rule applies when the government can demonstrate *either* the existence of an independent, untainted investigation that inevitably would have uncovered the same evidence *or* other compelling facts establishing that the disputed evidence inevitably would have been discovered." *United States v. Kennedy*, 61 F.3d 494, 499 (6th Cir. 1995). "This burden is met if the government shows that routine procedures that police would have used regardless of the illegal search would have resulted in the discovery of the disputed evidence." *United States v. Hodge*, 714 F.3d 380, 387 (6th Cir. 2013) (internal quotation marks omitted). We review de novo the district court's conclusion that the government so established the application of this exception by the preponderance of the evidence. *Kennedy*, 61 F.3d at 497.

It is well established that "[a] lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry . . . may be required to complete the search," like opening "closets, chests, drawers, and containers in which the [contraband] might be found." *United States v. Ross*, 456 U.S. 798, 820–21 (1982). Put differently, "judicial authorization to search a home for contraband drugs, money associated with drug trafficking, and drug paraphernalia would clearly justify the opening of doors, closets, drawers, safes, and other places where the listed items could be hidden." *United States v. Lengen*, 245 F. App'x 426, 434 (6th Cir. 2007); *see also United States v. Church*, 823 F.3d 351, 357 (6th Cir. 2016) (police officers executing a valid warrant to search for drugs in a house "had the right to open [a] safe" located in a closet). Here the search warrant authorized the seizure of small objects (methamphetamine, currency, and drug paraphernalia), so "the legitimate scope of the search is broad." *Hodge*, 714 F.3d at 388. The officers were entitled to break into the safe (which Mitchell conceded when he pleaded guilty, and the record demonstrates they were going to do so had Mitchell not disclosed its combination. The drugs contained inside the safe therefore would have been inevitably discovered.

For these reasons, the district court did not err when it refused to suppress the fruits of the *Miranda* violation.

C.

Finally, defendant raises an issue he did not raise below—whether the officers who searched his home lawfully seized the three firearms discovered there because the search warrant authorized only the seizure of methamphetamine, currency, and drug paraphernalia. The terms of his plea agreement preclude him from doing so here.

"If a defendant validly waives his right to appeal pursuant to a plea agreement, this court is bound by the agreement[.]" *United States v. Ferguson*, 669 F.3d 756, 764 (6th Cir. 2012). "When deciding whether a defendant has waived this right, we interpret the plea agreement using traditional principles of contract interpretation." *United States v. Riccardi*, 989 F.3d 476, 489 (6th Cir. 2021).

Mitchell's plea agreement provided the following waiver of his appellate rights: "Unless based on claims of ineffective assistance of counsel or prosecutorial misconduct, the Defendant knowingly and voluntarily waives the right (a) to directly appeal his conviction and the resulting sentence pursuant to Fed. R. App. P. 4(b) and 18 U.S.C. § 3742, and (b) to contest or collaterally attack his conviction and the resulting sentence under 28 U.S.C. § 2255 or otherwise." Conversely, the plea agreement specifically reserved his "right to appeal [the] denial of his motions to suppress evidence." This language is clear: Mitchell has waived his right to appeal his conviction for any issue not arising from the district court's resolution of his motions to suppress. *See Riccardi*, 989 F.3d at 489. That includes his newly discovered suppression issue presented here. While it is true, as Mitchell notes, that the plea agreement does not refer to 28 U.S.C. § 1291's grant of jurisdiction to us to hear appeals from final decisions of the district courts of the United States, § 1291 merely permits us to exercise jurisdiction over his appeal; it does not allow him to set aside his waiver of his ability "to directly appeal his conviction." *See, e.g.*, *United States v. Hack*, 999 F.3d 980, 984 (6th Cir. 2021).

### III.

For these reasons, we affirm the district court's judgment.