RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 26a0032p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 25-5051

BRANDIE NICOLE APPLETON,

*Defendant-Appellant*.

Appeal from the United States District Court for the Middle District of Tennessee at Nashville.
No. 3:22-cr-00013-1—Waverly D. Crenshaw, Jr., District Judge.

Decided and Filed:  February 5, 2026

Before:  BOGGS, READLER, and DAVIS, Circuit Judges.

_____

### COUNSEL

**ON BRIEF:** Kenneth P. Tableman, KENNETH P. TABLEMAN, P.C., Grand Rapids, Michigan, for Appellant.  Rachel M. Stephens, Nicholas J. Goldin, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee.

_____

### OPINION

_____

READLER, Circuit Judge.  Brandie Nicole Appleton pleaded guilty to possessing controlled substances with intent to distribute and possessing stolen ammunition.  Although the U.S. Sentencing Guidelines recommended 41 to 51 months of imprisonment given Appleton's offense level and criminal history, the district court sentenced Appleton to five years of probation.  Appleton's good fortune, however, would not hold.  Less than two months later, she was arrested for possessing an unprescribed controlled substance in violation of the terms of her

probation.  That offense caused the district court to revoke Appleton's probation and resentence her to a term of 44 months of imprisonment.

On appeal, Appleton claims that the district court erred in imposing her sentence of imprisonment.  Because Appleton waived her right to appeal any sentence for her offense of conviction within or below the Guidelines range, we must dismiss her appeal.

I.

Brandie Nicole Appleton and a co-conspirator burglarized a Tennessee pharmacy.  Their plundering cast a wide net.  All told, the two robbed the pharmacy of 800 morphine pills, 60 methylphenidate-hydrochloride pills, 330 buprenorphine pills, 860 clonazepam pills, 100 clobazam pills, bottom stocks to AR-15 rifles, and three boxes of ammunition.

As the pair attempted to flee the scene of their crime, they were stopped by police officers.  From the confines of her getaway car, Appleton recorded her interaction with the officers with her cell phone, posting the video to Facebook Live.  The video did her no favors.  Her behavior was defiant and combative—she repeatedly refused the officers' demands to open the door and get out of the car.  The officers eventually broke Appleton's car window, but she sped away.  Unfortunately for Appleton, she ended up driving down a dead-end driveway, leading to her capture and arrest.  A subsequent search of the vehicle uncovered the stolen controlled substances, AR-15 lower receivers, and ammunition, among other items.

Appleton pleaded guilty to possessing controlled substances with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and possessing stolen ammunition in violation of 18 U.S.C. § 922(j).  Notable here is that Appleton's plea agreement contained an appeal waiver, through which Appleton "knowingly waive[d] the right to appeal any sentence within or below the guideline[s] range as determined by the Court."  Plea Waiver, R. 80, PageID 187.  The plea agreement further stipulated that the government would "recommend a sentence within the court-determined guidelines range," with Appleton "free to recommend whatever sentence" she thought appropriate. *Id.* at 185.

At Appleton's sentencing, the district court determined that her offense level was 15 with a criminal-history category of VI, which together produced a Guidelines range of 41 to 51 months of imprisonment. Appleton requested a noncustodial sentence, emphasizing her difficult childhood, drug addiction, and the fact that she would likely have her parental rights terminated if she were placed in custody. She also highlighted her significant efforts to turn her life around. In the nine months that she had been on pretrial release leading up to her sentencing, Appleton had completed a residential drug-abuse-treatment program, became sober, and worked her way up to a management position at McDonald's. Looking favorably on Appleton's positive conduct and her acknowledgment of her drug addiction, the district court sentenced her to five years of probation. The court warned Appleton, however, that any inappropriate or unlawful behavior would result in serious repercussions.

And repercussions there were. Approximately six weeks into her probation, Appleton was arrested for possession of a controlled substance, theft of property, and tampering with evidence. The incident began when officers responded to a domestic-disturbance call at the home of Tim Currin, the father of Appleton's child. Upon their arrival, the officers discovered that Appleton was "extremely impaired." Revocation Hearing, R. 136, PageID 446. Currin told an officer that Appleton had taken Xanax pills from him. Following Appleton's unsuccessful attempt to flee the scene, officers found 64 Xanax pills in her possession.

At Appleton's subsequent probation-revocation hearing, the district court concluded that it had "erroneously" sentenced Appleton to probation following her plea and imposed a term of imprisonment of 44 months, within the original Guidelines range. *Id.* at 510. On appeal, Appleton asserts that the district court procedurally and substantively erred in setting her sentence.

## II.

Shaping this appeal is the government's assertion that Appleton waived her right to appeal a within-Guidelines sentence. *United States v. Morrison*, 852 F.3d 488, 490 (6th Cir. 2017) ("We will enforce an appeal waiver included in a plea agreement when the agreement is made knowingly and voluntarily."). Appleton responds that her appeal waiver does not apply

because the district court sentenced her to imprisonment only after revoking her initial sentence of probation. With all parties agreeing that Appleton "knowingly and voluntarily" agreed to the plea agreement and waiver provision, we must enforce the waiver if Appleton's claim falls within the provision's scope. *See United States v. Milliron*, 984 F.3d 1188, 1193 (6th Cir. 2021) (citing *United States v. Toth*, 668 F.3d 374, 377–78 (6th Cir. 2012)); *see also United States v. Fleming*, 239 F.3d 761, 764 (6th Cir. 2001).

Turn, then, to the "Waiver of Appellate Rights" section in Appleton's plea agreement. There, Appleton waived her "right to appeal any sentence within or below the guideline[s] range":

> Regarding sentencing, Defendant is aware that 18 U.S.C. § 3742 generally affords a defendant the right to appeal the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal any sentence within or below the guideline[s] range as determined by the Court associated with the Recommended Offense Level when combined with defendant's criminal history category as determined by the Court. Defendant also knowingly waives the right to challenge the sentence imposed in any motion pursuant to 18 U.S.C. § 3582(c)(2) and in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255 and/or § 2241.

Plea Waiver, R. 80, PageID 187. Interpreting that provision by utilizing "ordinary contract law principles," we agree that its broad language fairly encompasses Appleton's appeal. *United States v. Fowler*, 956 F.3d 431, 436 (6th Cir. 2020); *see United States v. Bowman*, 634 F.3d 357, 360 (6th Cir. 2011). Based on her initial sentencing hearing, Appleton had temporarily avoided imprisonment while instead serving a term of probation. But that term of probation was subject to a number of conditions, violations of which could result in revocation and a mandatory term of imprisonment. *See* 18 U.S.C. § 3565(a)(2), (b)(1). Indeed, following her probation violation, the district court conducted a revocation hearing, at which point it imposed a 44-month sentence, one that safely fell within the 41- to 51-month Guidelines range for Appleton's initial offense. Although Appleton's appellate waiver includes exceptions for instances of "involuntariness," "prosecutorial misconduct," or "ineffective assistance of counsel," Plea Waiver, R. 80, PageID 187, Appleton does not contend that any of the three apply here. Accordingly, her appeal waiver precludes our review of the merits of her claims.

It makes no difference that Appleton's sentence of imprisonment was imposed only after a probation-revocation hearing. Contrary to Appleton's suggestion, "revocation sentences are part and parcel of the sentence underlying the original conviction," not a freestanding, unrelated sentence. *United States v. Penn*, 788 F. App'x 337, 340 (6th Cir. 2019) (citing *United States v. Wheeler*, 330 F.3d 407, 412 (6th Cir. 2003)). Appleton's initial probation depended on her compliance with the terms of supervision, so that her subsequent term of imprisonment following the revocation of her probation was a sentence for the same underlying offense addressed in her initial sentence. It follows that Appleton's appeal waiver applies to "the sentence imposed at [her] probation revocation hearing." *United States v. Boone*, 801 F. App'x 897, 903 (4th Cir. 2020).

Reading Appleton's appeal waiver to permit her to appeal a within-Guidelines sentence simply because it was imposed after her probation was revoked would ignore that Appleton waived the right to appeal "any sentence within or below the guideline[s] range as determined by the Court." Plea Waiver, R. 80, PageID 187. Appleton's eventual 44-month sentence falls within that range. And that post-revocation sentence, we note, did not include additional punishment due to Appleton's violation of the terms of her probation. *See* Revocation Hearing, R. 136, PageID 510 ("I erroneously gave you probation. So I'm now here to correct that."). Nor did it impose terms to which Appleton did not agree in her plea agreement or of which she otherwise had no notice. *Cf. United States v. Carruth*, 528 F.3d 845, 846 (11th Cir. 2008) (per curiam) (concluding that the defendant's appeal waiver did not apply to post-conviction revocation of supervised release because there was "no specific language in the original plea waiver indicating that" the defendant agreed to waive his right to appeal the revocation of supervised release). Had the district court issued Appleton's sentence at the outset, there would be no doubt that Appleton was proscribed from appealing. The same would be true were Appleton to challenge her sentence through either an 18 U.S.C. § 3582(c)(2) motion or through "any collateral attack," all of which also are precluded by her plea waiver. Plea Waiver, R. 80, PageID 187. We see no reason to treat Appleton's appeal waiver differently simply because her imprisonment ultimately arose in the context of her probation revocation.

That is especially true when one considers the conditional nature of probation. *See* 18 U.S.C. § 3563 (listing the conditions of probation). Under 18 U.S.C. § 3565, a district court may revoke a sentence of probation and resentence a defendant "[i]f the defendant violates a condition of probation at any time prior to the expiration or termination of the term of probation." *Id.* § 3565(a); *see also* U.S. Sent'g Guidelines Manual § 7A2(a) (U.S. Sent'g Comm'n 2021). In some circumstances, in fact, the district court *must* revoke probation, such as the case here, when the defendant is found in possession of unprescribed controlled substances. 18 U.S.C. § 3565(b)(1). As a practical reality, then, a defendant sentenced to probation knows she must conform to the terms of her probation, as any violation may (or must) result in revocation. That is especially true for Appleton, whom the district court warned that any report of "inappropriate or unlawful" activity on her part would result in "repercussions." Sentencing Hearing, R. 138, PageID 711; *see also id.* at 709 (district court specifying that Appleton was "required not to use or possess any controlled substances without a valid prescription" during her probation). When the district court imposed Appleton's sentence of probation, the probation necessarily included the possibility of revocation. And revocation, in turn, would take Appleton back to where she started, from a sentencing standpoint, including being subjected to her negotiated appeal waiver.

That conclusion is consistent with the understanding that broadly written appeal waivers generally bar defendants from appealing "all parts of a sentence." *United States v. Nykoriak*, 803 F. App'x 919, 921 (6th Cir. 2020). In the appeal-waiver setting, we routinely give the word "sentence" a generous meaning. For instance, we apply appeal waivers to challenges to the manner or timing of a sentence. *See United States v. Hollins-Johnson*, 6 F.4th 682, 683 (6th Cir. 2021) (holding that "a challenge to the manner or timing of [the defendant's] sentence is a challenge to the sentence imposed"). We also apply appeal waivers to resentencing post-remand despite changes in the law. *See, e.g.*, *Morrison*, 852 F.3d at 491 (collecting cases); *United States v. McGee*, 516 F. App'x 515, 519 (6th Cir. 2013) ("Because the plea agreement was still controlling at resentencing, enforcement of the appellate waiver is appropriate."); *see also Brady v. United States,* 397 U.S. 742, 757 (1970) (holding that a defendant could not claim his plea was involuntary by relying on a Supreme Court decision that declared unconstitutional a provision relevant to his criminal sentence). So too, we apply appeal waivers in instances where a district

court denies a motion to withdraw a plea.  *See Toth*, 668 F.3d at 378–79 ("We therefore likewise hold that an appeal of the denial of a motion to withdraw a guilty plea is an attack on the conviction subject to an appeal waiver provision."); *Milliron*, 984 F.3d at 1193.  And we generally apply appeal waivers to challenges to a defendant's restitution order.  *See United States v. Hack*, 999 F.3d 980, 984 (6th Cir. 2021); *United States v. Riccardi*, 989 F.3d 476, 489 (6th Cir. 2021); *United States v. Winans*, 748 F.3d 268, 271 (6th Cir. 2014).  An appeal waiver, it follows, similarly applies following the revocation of probation.  *See Nykoriak*, 803 F. App'x at 920–21 (rejecting defendant's argument that his appeal waiver did not apply to a denial of a motion for early termination of supervised release).

*United States v. Bowman* does not change our conclusion.  We held there that the appeal waiver at issue did not apply to Bowman's challenge to the district court's decision to impose a consecutive sentence to his undischarged state sentence, as Bowman's plea agreement made no mention of the state sentence or challenges brought pursuant to U.S. Sentencing Guidelines Manual § 5G1.3(c).  *Bowman*, 634 F.3d at 361 (emphasizing that "[t]he government could have avoided any imprecision on this issue by including language that would have precluded Bowman from challenging the district court's application of U.S.S.G. § 5G1.3, but it did not do so").  At the same time, it bears emphasizing that Bowman did not attempt to challenge the sentence for his underlying federal conviction.  *See id.*  That sets his case well apart from this one, where Appleton seeks to challenge the procedural and substantive reasonableness of her sentence. Indeed, we have frequently refused to follow *Bowman* when interpreting the scope of a broad appeal waiver, like Appleton's.  *See Hollins-Johnson*, 6 F.4th at 684 (collecting cases) (explaining that Bowman's waiver barred *only* his right to appeal a sentence at or below the Guidelines range while broad appeal waivers waive the right to challenge the sentence on any grounds so long as the district court does not impose a sentence above the statutory or Guidelines-range maximum).  So too here.

\*        \*        \*        \*        \*        \*

We dismiss the appeal.